Opinion issued January 14, 2016



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-14-00843-CV

—————————————

**RAYMOND ESPINOSA, Appellant**

**V.**

**AARON'S RENTS, INC., Appellee**

---

**On Appeal from the 129th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-70720**

---

## O P I N I O N

In this employment-related case, a former employee appeals the trial court's summary judgment on the employee's suit for defamation and related claims against his former employer. Raymond Espinosa worked as a manager at the

Monroe, Texas store of Aaron's Rents, Inc. Aaron's leases and sells home furnishings, appliances, and electronics.

A month after Espinosa left employment with Aaron's, the store's personnel discovered that merchandise was missing from its inventory. Aaron's linked fraudulent rental records for part of that inventory to Espinosa's employee identification number. Aaron's regional office in Houston conducted an internal investigation; Aaron's then reported the suspected theft to the Houston Police Department. The Harris County District Attorney's Office conducted its own investigation and sought an indictment from a Harris County grand jury. The grand jury declined to indict Espinosa.

Espinosa then sued Aaron's for malicious prosecution, intentional infliction of emotional distress, defamation, and an unpaid performance bonus, alleging that Aaron's had falsely accused him of criminal conduct. Aaron's moved for summary judgment, contending that: (1) Espinosa is judicially estopped from asserting his claims because he failed to disclose them as contingent assets in his Chapter 7 bankruptcy case; (2) Aaron's did not initiate or procure Espinosa's prosecution; (3) any statements that Aaron's made to its employees about Espinosa occurred during the course of its internal investigation into suspected wrongdoing, entitling Aaron's to the qualified privilege that attaches to such communications; (4) Aaron's report of suspected wrongdoing to the police is similarly subject to a

2

qualified privilege that bars Espinosa's tort claims; (5) no evidence raises a fact issue that Aaron's acted with malice in making any statement alleged to be defamatory; and (6) no evidence supports Espinosa's fraud and breach of fiduciary duty claims against Aaron's based on its failure to pay Espinosa a final quarterly bonus.

Finding no error, we affirm.

## BACKGROUND

Aaron's employed Espinosa as general manager of its Monroe store for most of the period between October 2002 and January 2006. In that position, Espinosa was responsible for ensuring that store employees complied with company policies. Espinosa reported to Aaron's Regional Manager in Houston, Roger Hooker. During the last quarter of 2005, Aaron's planned to terminate Espinosa's employment based on poor performance. Before it took that action, in early January 2006, Espinosa called Hooker and told him that he would not be returning to work. Espinosa asked Hooker if he would receive his final paycheck and quarterly bonus; Hooker told Espinosa that he would.

Aaron's paid its store managers quarterly bonuses approximately 45 days after the quarter's close. The bonus for each store manager was a percentage based on the store's net revenues and net profit. According to policy, Aaron's deducted any missing cash or merchandise from any bonus amount paid to its managers.

3

Following Espinosa's departure, Aaron's reviewed the Monroe store's rental agreements and it found records showing that some customer's accounts had gone unpaid for months. In February 2006, Aaron's sent a truck to the home of one of those customers, Jimmie Norris, to repossess the rented merchandise. The Aaron's driver informed Norris that, according to Aaron's records, Norris had rented a keyboard, three refrigerators, a washer/dryer, a big screen television, and a home theater system from Aaron's. Norris responded that he had never signed a rental contract to rent anything from Aaron's.

### *The store's internal investigation*

Aaron's assigned its Vice President of Internal Security, Danny Walker, and its Legal Counsel for Southwest Operations, Nicole Lee, to conduct an internal investigation of the incident. During the investigation, they interviewed Norris, Monroe store employees Tina Duhon, Dawnisha Collier, William Rogers, and James Hebert, and Customer Accounts Manager Joe Mermella.

Norris also provided a handwritten statement explaining his interactions with Espinosa, whom he had met at a gym a few years before. About a year after they became acquainted, Norris ran into Espinosa at the gym and told him he was interested in buying some leather furniture and a big screen television. Espinosa responded that the store did not have a television available at the time, but that he would keep an eye out for one. The next time Norris saw Espinosa at the gym,

4

Espinosa told him he had a big screen television that he would sell to Norris for cash. In a later telephone conversation, Norris agreed to pay $400 for a 52-inch television. Espinosa told him not to come to the store; he would have the television delivered to Norris's home.

Espinosa later called Norris and told him that a nearby Aaron's store was having a tent sale that included leather furniture. Norris found the prices too high and left without buying anything. Soon afterward, Espinosa called Norris and told him that he had a leather sofa, chair and ottoman available. Norris and Espinosa negotiated a total price of $1200 for the television and the furniture. The next evening, an Aaron's truck delivered the items, and Norris gave the driver a $1200 check payable to Aaron's Rents.

After more than a year, Norris contacted Espinosa about buying a washer, dryer, and refrigerator for his new house. Espinosa called Norris that same week and offered the items for somewhere between $500 and $700 cash. Norris responded that he was willing to pay that amount if the appliances were in acceptable condition. Espinosa delivered to Norris a refrigerator with no shelves and a washer/dryer with no hoses or cords, for which Norris paid Espinosa $500 cash.

Documentation prepared under Espinosa's code number reflects that, instead of purchasing it, Norris leased merchandise similar to the items he claimed to have

5

purchased. Espinosa admitted that the documentation appeared false, and he agreed that "somebody created phony information about this transaction"; the documentation was prepared using Espinosa's employee number. Hooker informed the DA's Office that those items were written off as "Regional Manager Shrink," meaning that none was ever sold as retail through Aaron's store system.

Aaron's performed an audit as part of its internal investigation. It discovered that, in addition to the documentation relating to Norris, approximately ten other lease agreements prepared at the store over the past 18 months appeared to be false. Aaron's attempted to contact the customers whose names appeared on the suspect accounts. The customers Aaron's located denied renting the merchandise identified on the leases; much of the information on the leases, including addresses, social security numbers, and driver's license numbers, was false. Further, the delivery records did not contain any information for the apparently fraudulent transactions. The audit revealed that the store records did not account for approximately 30 missing items, including washers and dryers, televisions, computers, home stereo systems, and furniture; the aggregate amount of these items was approximately $63,556.32.

In interviewing the other store employees, Aaron's learned that:

- Duhon's brother's account contained a rental agreement for a big-screen television which, he confirmed, he had not rented. When

confronted with the information, Espinosa told Duhon he knew about the television and would have money dropped off to pay for it.

- According to Duhon, the signature and initials on a false rental agreement appeared to have been made by Espinosa. Duhon also stated that the accounts with false rental agreements were accounts handled by Espinosa and he would tell the staff to let him handle those accounts.

- Duhon created a lease folder for Norris and three other customers at Espinosa's request, but Espinosa told her not to process them because they were "related to him and were good," and that he would take their payments directly.

- Certain customers told Duhon that Espinosa took their lease payments directly, and Espinosa handled a number of transactions in violation of company policy.

- According to Collier, Espinosa contacted her shortly after ending his employment and asked her to help facilitate a theft of Aaron's merchandise by filling out an order form with false information and scheduling the products to be delivered. Espinosa asked her what she wanted out of the deal—money or product. Collier refused the proposal.

- One customer contacted by Aaron's, whose name appeared on a lease file, had not rented or bought anything from the store, and when she had gone in to browse, a store employee asked her to write her name and address on a form.

After discovering that $63,556.32 in merchandise was missing from the Monroe store's inventory, Aaron's did not pay Espinosa a bonus for the last quarter of 2005. Espinosa filed a complaint with the Texas Workplace Commission, explaining on the form that he was told he would not receive the

7

bonus because he had too many nonpaying accounts for which, as manager, he had been responsible.

### *The criminal investigation and prosecution*

Lee contacted the Houston Police Department regarding the suspected theft. HPD Officer Hernandez met with Lee at the Monroe store.

Lee reported that Aaron's believed Espinosa had fraudulently appropriated property belonging to Aaron's by filing accounts under actual customer names with fictitious information. Lee informed Officer Hernandez Aaron's had conducted an audit of store records going back to September 2005 and there was unaccounted merchandise worth a total of $63,556.32.

HPD assigned Officer Chapman to conduct a follow-up investigation. Lee provided him with copies of rental agreements believed to be false. Aaron's reported it had attempted to contact these customers and the ones who were reached denied either renting or purchasing the merchandise listed on their agreements except for Norris, who had purchased merchandise directly from Espinosa but was listed as renting several items he did not rent. Aaron's also provided Officer Chapman with a partial listing of the customer accounts and merchandise involved.

When he attempted to contact the numbers in the false rental agreements, Officer Chapman discovered that many contained bad numbers, addresses of

motels, and duplicate addresses. Officer Chapman reported to the DA's Office that Aaron's records verified $31,091.16 in missing merchandise listed in false rental agreements. Officer Chapman also reached a customer who stated that he had borrowed a large television from Espinosa to watch election returns and then later purchased the television from Espinosa, but had never rented anything from Aaron's. Espinosa previously had told Hooker that he had loaned a television to a constable but had never gotten it back.

Both the HPD and the DA's investigation unit reviewed Aaron's records relating to the transactions and interviewed Hooker, Lee, Walker, Aaron's personnel, and customers, including Norris, whose names appeared on the false rental agreements. The information collected corroborated that collected in Aaron's internal investigation. The DA's office acknowledged some difficulty in tracing the missing items and ascertaining their value. In July 2006, following his investigation, Officer Chapman filed criminal charges against Espinosa, and the DA's office presented the grand jury with a proposed indictment charging Espinosa with felony theft of merchandise with an approximate value of $20,100. The grand jury ultimately presented a "no bill" to the charges against Espinosa, and the charges were dismissed in August 2008.

The assistant district attorney who presented the case averred that the DA's office made the decision to prosecute Espinosa for theft based on its own

9

independent investigation of the case and that Aaron's did not participate in the decision to charge or prosecute Espinosa. The decision not to refile a felony theft case against Espinosa comported with the DA's office policy to follow the decision of the grand jury, even if the prosecuting attorney disagreed with the decision. The assistant district attorney nevertheless stated that Espinosa had committed theft based on his investigation and the evidence that he reviewed.

### *Espinosa's bankruptcy and course of proceedings in this lawsuit*

On October 20, 2010, Espinosa petitioned a federal bankruptcy court in the Southern District of Texas for bankruptcy relief under Chapter 7 of the Bankruptcy Code. Espinosa did not disclose his claims against Aaron's in the proceeding. He responded "none" to the question asking him to list "[o]ther contingent and unliquidated claims of any nature."

Six days later, through different counsel, Espinosa filed his original petition in this lawsuit. The original petition named Norris as the sole defendant, but six weeks later, Espinosa amended his petition to add Aaron's as a defendant. Espinosa did not amend his bankruptcy filings to disclose the state court lawsuit as a contingent asset before January 31, 2011, when the bankruptcy court granted a discharge to Espinosa and closed the bankruptcy case.

Aaron's moved for summary judgment in this case on December 13, 2013; in its motion, Aaron's contended that Espinosa was estopped from bringing this

suit because Espinosa had failed to disclose it as an asset in the bankruptcy proceeding.

After reviewing the summary-judgment motion, Espinosa moved to reopen his Chapter 7 proceeding for the purpose of disclosing this lawsuit in an amended schedule. The bankruptcy court re-opened the proceeding, granted leave to file the amendment, and appointed a trustee. The trustee, in turn, authorized Espinosa's attorney to pursue this suit on behalf of the bankruptcy estate, and Espinosa informed the trial court of these developments in his summary-judgment response. After the state trial court granted summary judgment, the trustee notified the bankruptcy court of that development, and the bankruptcy court closed the case again.

## DISCUSSION

On appeal, Espinosa challenges the trial court's summary judgment, contending that: (1) he is not judicially estopped from bringing this suit, because the bankruptcy court allowed him to amend his schedule of assets; (2) some evidence supports his claim for malicious prosecution, defamation, and intentional infliction of emotional distress; and (3) Aaron's failure to pay him his quarterly bonus as promised is evidence of fraud and breach of fiduciary duty.

## I.  Standard of Review

We review a trial court's summary judgment de novo.  *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).  If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any one of the grounds is meritorious.  *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

Aaron's motion requests summary judgment on both traditional and no-evidence grounds.  When reviewing a summary judgment motion, we must (1) take as true all evidence favorable to the nonmovant and (2) indulge every reasonable inference and resolve any doubts in the nonmovant's favor.  *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (citing *Provident Life & Accid. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)).

In a traditional summary judgment motion, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law.  TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).  The defendant moving for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or

conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

After adequate time for discovery, a party may move for a no-evidence summary judgment on the ground that no evidence exists to support one or more essential elements of a claim or defense on which the opposing party would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The trial court must grant the motion unless the nonmovant produces summary judgment evidence raising a genuine issue of material fact. *Id.* More than a scintilla of evidence exists if the evidence "would allow reasonable and fair-minded people to differ in their conclusions." *Forbes Inc. v. Granada Bioscis., Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). To defeat a no-evidence motion for summary judgment, the respondent is not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements. TEX. R. CIV. P. 166a(i) cmt.

## II. Judicial Estoppel

Espinosa challenges Aaron's contention that Espinosa is judicially estopped from prosecuting this lawsuit. Judicial estoppel is an equitable doctrine that applies when a party intentionally asserts contradictory facts or legal positions in one forum to obtain an unfair advantage in another. *Tow v. Pagano*, 312 S.W.3d

751, 756 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (citing *In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir.1999)).

Because the estoppel issue here involves a bankruptcy proceeding, we apply federal law to determine whether Aaron's proved as a matter of law that judicial estoppel bars Espinosa's lawsuit against Aaron's. *See id.* Accordingly, as an affirmative defense to this suit, Aaron's was required to conclusively establish that (1) Espinosa asserted a legal position in this state court proceeding that is clearly inconsistent with his prior position in the bankruptcy court; (2) a court accepted the prior position; and (3) the non-disclosure was intentional and not inadvertent. *See Bailey v. Barnhart Interest, Inc.*, 287 S.W.3d 906, 911 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *In re Costal Plains*, 179 F.3d at 206).

Aaron's did not bear its burden to demonstrate that Espinosa is estopped from prosecuting this case as a matter of law. By the time the trial court ruled on the summary-judgment motion, the bankruptcy court had granted Espinosa's motion to reopen his Chapter 7 case and had permitted Espinosa to amend his filings to disclose the state lawsuit as a contingent asset. Aaron's has not identified any case in which a court has applied judicial estoppel under the same circumstances, and we find none. We decline to second-guess the bankruptcy court's rulings reopening the case and accepting the disclosure. Because the bankruptcy court modified its discharge and permitted the amended disclosure,

14

Aaron's judicial estoppel argument cannot support the trial court's summary judgment; the bankruptcy court no longer acted in reliance on the inconsistent position. *See id.*

### III.  Malicious Prosecution

Espinosa's claim for malicious prosecution requires proof that (1) a criminal prosecution was commenced against him, (2) Aaron's initiated or procured the prosecution, (3) the prosecution terminated in Espinosa's favor, (4) he is innocent of the charges, (5) Aaron's lacked probable cause to initiate the prosecution, (6) Aaron's acted with malice, and (7) Espinosa suffered damages. *See Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 792 n.3 (Tex. 2006) (citing *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997)); *Soon Phat, L.P. v. Alvarado*, 396 S.W.3d 78, 92 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Aaron's summary-judgment motion challenged that no evidence raises a fact issue concerning element (2), that Aaron's initiated or procured the action against Espinosa; element (5), that Aaron's lacked probable cause; and element (6), that Aaron's acted with malice.

We first consider the element of initiation or procurement. A defendant procures a criminal prosecution if that defendant's actions are enough to cause the prosecution, and but for those actions, the prosecution would not have occurred. *See Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 509 (Tex. 2002). A

defendant cannot be liable for malicious prosecution when the decision to prosecute is left to the discretion of another, such as a law enforcement official or a grand jury, unless the defendant knowingly provided false, material information and the false information caused a criminal prosecution. *King v. Graham*, 126 S.W.3d 75, 78 (Tex. 2003) (per curiam). The plaintiff also must prove that "the prosecutor acted based on the false information and that but for such false information the decision [to prosecute] would not have been made." *Id.* at 76.

No evidence shows that Aaron's knowingly provided false information to the authorities. Espinosa claims that Aaron's drew a false conclusion from the store documents—namely, that Espinosa stole the merchandise. Espinosa does not, however, challenge the facts that underlie Aaron's inference, specifically Norris's account of how he came to acquire the Aaron's merchandise from Espinosa, the false records produced under Espinosa's employee identification number, the fact that a large quantity of merchandise had gone missing from the store Espinosa managed, and other irregularities and policy violations apparent in the store's records. Whether Aaron's reached a different conclusion than Espinosa would from these undisputed facts does not show that any of them was false when Aaron's provided them to law enforcement. In his response to Aaron's motion for summary judgment, Espinosa did not adduce evidence that Aaron's had provided false evidence to investigators that materially advanced his prosecution.

16

Further, in his affidavit supporting the motion for summary judgment, the assistant district attorney who prosecuted the case attested that Aaron's did not have the ability or authority to arrest, charge or prosecute Espinosa the DA's Office did not act at the defendants' direction or instruction, and it acted alone based on its own investigation in deciding to charge Espinosa. "[A] person cannot procure a criminal prosecution when the decision whether to prosecute is left to the discretion of another person, a law enforcement official, or the grand jury." *Browning-Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 292(Tex. 1994).

Because the evidence does not support a reasonable inference that Aaron's provided false information that was material and relied upon by those who prosecuted Espinosa, we hold that the trial court did not err in granting summary judgment on Espinosa's malicious prosecution claim.

## IV.  Defamation

Espinosa next contends that the trial court erred in granting summary judgment on his defamation claim. As evidence that defamatory statements were made, Espinosa relies on his testimony: (1) regarding a telephone conversation that he had with, a store customer, in which the customer told Espinosa that Aaron's had contacted him and told him that Espinosa was fired for stealing; and (2) that another Aaron's customer he ran into at a gas station told him that, when she visited Aaron's to pay her account, Espinosa's former boss informed her that

17

Espinosa had been fired because he stole merchandise from Aaron's. Espinosa's defamation claim also relies on allegedly false and disparaging oral statements made by Aaron's employees to the police and the DA's office.

### A. Applicable law

A private plaintiff seeking to recover on a defamation claim generally must prove that (1) the defendant published a statement of fact about the plaintiff; (2) the statement was defamatory; (3) the statement was false; (4) the defendant acted negligently in publishing the false and defamatory statement; and (5) the plaintiff suffered damages as a result. *See WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *Brown v. Swett & Crawford of Texas, Inc.*, 178 S.W.3d 373, 382 (Tex. App.—Houston [1st Dist.] 2005, no pet.). A one-year statute of limitations applies to Espinosa's defamation claim. *See* Tex. R. Civ. P. § 16.002(a); *Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 587 (Tex. App.—Austin 2007, pet. denied).

Aaron's claims that it is entitled to a qualified privilege against Espinosa's defamation claims because the defamatory statements it was alleged to have published occurred in connection with its internal investigation. A conditional or qualified privilege attaches to communications made in the course of an [employer's] investigation following a report of employee wrongdoing." *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646–47 (Tex. 1995). If

the circumstances support application of the qualified privilege, the plaintiff must prove that the defendant acted with actual malice, rather than mere negligence, in publishing the statement. *Saudi v. Brieven*, 176 S.W.3d 108, 118 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (explaining that "a qualified privilege to make a statement exists when the person making the statement makes it in good faith on a subject matter in which the speaker has a common interest with the other person, or with reference to which the speaker has a duty to communicate to the other" (internal quotation omitted)). A statement is made with actual malice when the speaker makes it with knowledge of its falsity or with reckless disregard as to its truth. *Randall's Food Mkts.*, 891 S.W.2d at 646.

When a qualified privilege applies, a summary judgment movant may negate actual malice with an uncontroverted affidavit that indicates that it did not publish the alleged defamatory statement with actual knowledge of its falsity or with reckless disregard for its truth. *Assoc. Press v. Cook*, 17 S.W.3d 447, 458 (Tex. App.—Houston [1st Dist.] 2000, no pet.).

## B.     Qualified privilege

First, we determine whether the qualified privilege applies in our review of the summary judgment evidence. We conclude that it does with respect to Aaron's investigation of the missing merchandise and its report to the police. A qualified privilege also cloaks statements made to law enforcement; thus, any statements

19

that Aaron's employees made to the police or DA's office have a qualified privilege. *See Darrah v. Hinds*, 720 S.W.2d 689, 691 (Tex. App.—Fort Worth 1986, writ ref'd n.r.e.). For these statements, Espinosa must demonstrate that Aaron's acted with actual malice. *See Saudi,* 176 S.W.2d at 118.

Pointing to the testimony about the conversations he had with store customers, Espinosa contends that no qualified privilege exists because Aaron's made statements to persons who had no interest in the investigation. *Henriquez v. Cemex Mgmt.*, 177 S.W.3d 241, 252–53 (Tex. App.—Houston [1st Dist. 2005, pet. denied); *see also Saudi*, 176 S.W.3d at 118 (explaining that privilege does not apply if information is furnished to others not sharing common interest).

As evidence supporting Aaron's motion, regional manager Hooker averred in an affidavit that, to the extent that he or regional accounts manager Scott Newton told employees or customers of Espinosa's suspected crimes, those statements "were made in furtherance of Aaron's investigation into suspected theft by Espinosa," and were necessary communications for their investigation. With respect to customer Cardenas, other evidence in the summary-judgment record supports Hooker's affidavit that Aaron's contacted Cardenas in connection with the investigation; one of the suspect accounts was in Cardenas's name. Aaron's contact with Cardenas therefore occurred within the scope of the investigation and was privileged.

The same is not true of Espinosa's claim that an Aaron's customer told him that an Aaron's employee told her that Espinosa was fired because he stole merchandise from Aaron's. This publication occurred after Aaron's had concluded its investigation; thus, Aaron's did not bear its burden to conclusively prove that the investigative privilege extends to this statement.

*Actual malice*

We next consider, with respect to the privileged statements, whether the summary-judgment record contains evidence that Aaron's was motivated by malice when it allegedly made them. *See Randall's Food Mkts.*, 891 S.W.2d at 646 ("Proof that a statement was motivated by actual malice existing at the time of publication defeats the privilege.").

Espinosa has not identified any statement that Aaron's made to authorities or in connection with its internal investigation that was false or made with reckless disregard of the truth. He leaves uncontroverted Aaron's regional manager's sworn denial that Aaron's published any alleged defamatory statement with actual knowledge of its falsity or with reckless disregard of its truth. *Cook*, 17 S.W.3d at 458. With respect to all but the one statement, we therefore hold that the trial court correctly granted summary judgment on Espinosa's defamation claim because the record reveals no evidence supporting the element of malice necessary to prevail against a defendant engaged in privileged communications.

*Limitations*

With respect to the unprivileged statement made at the gas station, we note that Aaron's summary-judgment motion raised the additional affirmative defense of limitations to defeat Espinosa's defamation claim. The statement occurred no later than August 2008, when the criminal charges against Espinosa were dismissed. Espinosa did not file this lawsuit until October 2010. Espinosa's appellate briefing does not challenge summary judgment based on limitations; his issue addressing summary judgment on the defamation claim challenges only any reliance on the investigative privilege or the refusal to consider evidence to which Aaron's raised a hearsay objection.

If, as here, the appealing party does not assert a broad challenge to rendition of summary judgment or fails to challenge a ground on which the movant asserted a right to summary judgment in the trial court, we must affirm—without considering whether the summary judgment was rendered properly or improperly on the unchallenged ground. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970) (affirming summary judgment because "it may have been based on a ground not specifically challenged" on appeal and "there was no general assignment that the trial court erred in granting summary judgment") (citations omitted); *see also Vawter v. Garvey*, 786 S.W.2d 263, 264 (Tex. 1990) (proscribing reversal of summary judgment without properly assigned error); *Ellis*

*v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 898 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (affirming judgment because of unchallenged ground). Because Espinosa waived any contention that the statute of limitations does not bar his defamation claim based on the unprivileged statement, we leave the summary judgment on Espinosa's defamation claim undisturbed.

## V.      Intentional Infliction of Emotional Distress

Aaron's motion for summary judgment contended that Espinosa's intentional infliction of emotional distress claim failed as a matter of law because he could not establish the necessary elements, which are: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999). To prove an intentional infliction of emotional distress claim, the plaintiff's emotional distress must be the intended or primary consequence of the defendant's conduct. *Id.* (citing *Standard Fruit & Veg. Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998)).

Espinosa contends that if Aaron's summary judgment motion eliminates his malicious prosecution claim, then the gap-filling tort claim of intentional infliction of emotional distress must stand. *See Standard Fruit*, 985 S.W.2d at 68 (explaining that purpose of intentional infliction of emotional distress claim "is to

supplement existing forms of recovery by providing a cause of action for egregious conduct that its more established neighbors in tort doctrine would technically fence out" (internal quotation omitted)).  However, an intentional infliction claim is unavailable to plaintiffs who bring unmeritorious malicious prosecution claims absent conduct otherwise outside the bounds of human decency.  *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 448 (Tex.  2004) (citing cases where intentional infliction of emotional distress claim is not available, including cases involving claims of malicious prosecution and defamation); *see also Kroger Tex. L.P.*, 216 S.W.3d at 796–97 (holding plaintiff failed to prove defendant's conduct of initiating criminal proceedings against plaintiff was extreme and outrageous where no evidence showed that defendant knew plaintiff was innocent of charges and intentionally subjected her to emotional distress). "[W]hile post-termination conduct may constitute intentional infliction of emotional distress if it goes 'beyond all possible bounds of decency,' 'ordinary' post-termination disputes are insufficient to support liability." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 817 (Tex. 2005) (quoting *Zeltwanger*, 144 S.W.3d at 445)); *Tex. Farm Bur. Mut. Ins. v. Sears*, 84 S.W.3d 604, 611 (Tex. 2002).  Reporting activity to police does not constitute extreme and outrageous behavior. *Lang v. City of Nacogdoches*, 942 S.W.2d 752, 759–60 (Tex. App.—Tyler 1997, writ denied).  Espinosa does not base his intentional infliction claim on any act apart from those underlying his

other tort claims.  Accordingly, we hold that the trial court did not err in granting Aaron's motion for summary judgment on this ground.

## VI.    Fraud and Breach of Fiduciary Duty

Finally, Espinosa challenges the summary judgment on his fraud and breach of fiduciary duty claims, contending that Aaron's had no intention of paying him the 2005 fourth-quarter bonus when he was told he would receive one.  To establish a fraud claim, a plaintiff must show (1) the defendant made a material representation; (2) which was false when the representation was made; (3) the defendant knew it was false or made it recklessly with the intent that the plaintiff act upon it; (4) the plaintiff acted in reliance on the representation; and (5) the plaintiff suffered injury.  *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).

The undisputed facts demonstrate that Aaron's was not aware of the false rental agreements or the merchandise missing from the Monroe store when Hooker told Espinosa that he was eligible to receive the bonus.  Espinosa does not contest that merchandise was missing.  He admitted that his bonus was premised on the store's net revenues and profit.  The undisputed evidence thus precludes a showing that Aaron's made a misrepresentation which it knew was false when it was made.

Further, Aaron's did not owe Espinosa a fiduciary duty as a matter of law. *Beverick v. Koch Power, Inc.*, 186 SW.3d 145, 153 (Tex. App.—Houston [1st

Dist.] 1997, pet. denied). We hold that the trial court did not err in granting summary judgment on these claims.

## Conclusion

We hold that the trial court correctly granted Aaron's motion for summary judgment on Espinosa's tort claims. We therefore affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.