

# Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00157-CV

Jim **SCHMIDT**, Individually and d/b/a the Goat Company and the Wildlife Ranch,
Appellant

v.

Dr. Charles W. **GRAHAM**, DVM, Tyler Graham, Kristen McFarlin, and Hamilton Commission
Company, LLC,
Appellees

From the 452nd District Court, Mason County, Texas
Trial Court No. 185791
Honorable Stephen Ellis, Judge Presiding

Opinion by:　Rebeca C. Martinez, Chief Justice

Sitting:　　Rebeca C. Martinez, Chief Justice
　　　　　　Lori I. Valenzuela, Justice
　　　　　　Sandee Bryan Marion, Chief Justice (Ret.)[1]

Delivered and Filed: July 26, 2023

AFFIRMED

Appellant Jim Schmidt, individually and doing business as the Goat Company and the

Wildlife Ranch (collectively "Schmidt"), appeals from a final judgment, rendered after a bench

trial, that awards him nothing on usury and defamation claims that he asserted against appellees,

Hamilton Commission Company, LLC ("HCC"), Dr. Charles W. Graham, DVM, Tyer Graham,

and Kristen McFarlin, and that awards HCC $105,370.66 in damages for its breach of contract

---

[1] Retired Fourth Court of Appeals Chief Justice Sandee Bryan Marion assigned to this Court by the Chief Justice of
the Supreme Court of Texas pursuant to the government code. *See* TEX. GOV'T CODE ANN. § 74.003.

counterclaim and $33,047.00 in conditional attorney's fees. In eleven issues, which we reorder and broadly reclassify as four, Schmidt contends that the evidence is factually insufficient to support the trial court's factual findings that support the: (1) denial of his usury claim; (2) denial of his request to pierce HCC's corporate veil; (3) denial of his defamation claim; and (4) acceptance of HCC's breach of contract counterclaim. We affirm.

## I. Background

The underlying commercial dispute revolves around the sale of rams. Schmidt is a livestock trader. Dr. Charles W. Graham, DVM, and Tyler Graham (collectively "the Grahams") are LLC members of and joint owners of HCC. McFarlin is HCC's business manager. HCC facilitates a market for buyers and sellers of sheep, goats, and cattle by owning and operating a livestock auction barn. HCC charges a 3.25 percent commission on all gross sales. After a sale, HCC promptly pays the seller from a custodial account, and, in accordance with industry regulations, expects payment from buyers three days after the sale.

On almost a weekly basis, for over a year before the lawsuit began, Schmidt sold rams at HCC's weekly auction without bringing them to the barn. Schmidt customarily purchased his own rams back at the same auction. Nevertheless, these sales resulted in a payment to Schmidt by HCC from its custodial account, a charge of HCC's standard 3.25 percent commission, and a request for payment from HCC to Schmidt. Schmidt generally paid HCC at the following week's auction, when the cycle began anew.

After approximately fifty-seven such transactions, the cycle ended because Schmidt defaulted. Schmidt purchased $126,894.32 worth of rams at the last HCC auction for which he participated. Schmidt's check for $46,338.88 for the previous week's sale was returned to HCC for insufficient funds. Schmidt made a partial payment and executed a written agreement in which

he acknowledged a past due balance of $113,506.59 and promised to pay it. The handwritten agreement provides:

2-8-16

Original Amount       $173,233.20

As of 2-8-16[,] Jim has paid $59,726.61[,] leaving an outstanding balance of $113,506.59.

Jim will send rams 2-13-16[,] to Big Horn to apply to bill.

6.0% interest applied to outstanding balance.

Jim will continue to pay each Monday until the balance in full is paid.

*/s/ Jim Schmidt*
*/s/ Kristen McFarlin*

When Schmidt did not pay, McFarlin complained to Marvin Wills, a Special Ranger with the Texas and Southwest Cattle Raisers Association, and she provided him with a written statement. Consequently, Schmidt was arrested and indicted on a later-dismissed charge of livestock theft.

On the civil side of the dispute, Schmidt sued the Grahams on a claim of usury and all appellees on a claim of defamation. Schmidt alleged that each weekly transaction was a "shame sell." Specifically, Schmidt alleged that each transaction was a loan and interest and that the interest the Grahams charged was in violation of Texas's usury statute. All Appellees generally denied Schmidt's allegations, and they countered that Schmidt's dealings with HCC were his attempt to inflate prices and manipulate the market. Additionally, HCC asserted a counterclaim against Schmidt for breach of his agreement to repay his past due balance of $113,506.59.

The case was tried to the bench. The trial court signed a final judgment that awarded Schmidt nothing on his usury and defamation claims, and awarded HCC $105,370.66 on its counterclaim for breach of contract and $33,047.00 in conditional attorney's fees. Thereafter, the

trial court issued findings of fact and conclusions of law. Schmidt timely appealed from the trial court's final judgment.

## II. DISCUSSION

### A. Standard of Review

When, as here, the factual sufficiency of the evidence supporting the trial court's findings of fact are challenged, we review the findings for sufficiency under the same legal standards applied to review jury verdicts. *Desta v. Anyaoha*, 371 S.W.3d 596, 598 (Tex. App.—Dallas 2012, no pet.) (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991)).

When a party attacks the factual sufficiency of an adverse finding on an issue on which he has the burden of proof, that party must show that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (pre curiam). When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *See also Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

### B. Usury

In Schmidt's first issue, he challenges the factual sufficiency of the trial court's factual findings supporting the denial of his usury claim. The essential elements of a usurious transaction are: (1) a loan of money, (2) an absolute obligation that the principal be repaid, and (3) the exaction of a greater compensation than allowed by law for the use of the money by the borrower. *Holley*

*v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982). Moreover, because usury statutes are penal in nature, they must be strictly construed, and if there is any doubt as to legislative intent to punish the activity complained of under usury statutes, the doubt must be construed in favor of the lender. *Steves Sash & Door Co. v. Ceco Corp.*, 751 S.W.2d 473, 476 (Tex. 1988); *Hatzenbuehler v. Call*, 894 S.W.2d 68, 69 (Tex. App.—San Antonio 1995, writ denied). The Texas Supreme Court has held that "it is a fundamental principle governing the law of usury that it must be founded on a loan or forbearance of money; if neither of these elements exist, there can be no usury." *Crow v. Home Sav. Ass'n of Dallas Cnty.*, 522 S.W.2d 457, 459 (Tex. 1975).

Regarding Schmidt's usury claim, the trial court found:

6. Schmidt . . . failed to prove by a preponderance of the evidence that the transactions in question were loans of money. To the contrary, from the credible evidence, the Court finds that the amounts charged were commissions on the sale of livestock in the ordinary course of [HCC's] business.

7. Schmidt further failed to prove by a preponderance of the evidence that the commission charged on the transactions in question was interest. Rather, the Court finds that, because the commission charged on these transactions was contingent on gross sales, was calculated based on a percentage of those sales, and was uncertain, the commission was not interest.

Schmidt hinges his factual sufficiency challenge of these factual findings on HCC's course of conduct of allowing him seven — instead of the livestock-industry standard of three — days to pay for the rams that he purchased from himself at the prior week's auction. As support, Schmidt primarily relies on the opinions of John E. Sutton, who is licensed in the state of Texas as both an attorney and a certified public accountant. Sutton opined that each weekly auction in which Schmidt participated constituted a "shame sell," and the commission that HCC collected from each of those sales should be more properly classified as "forbearance" for the money that HCC advanced to Schmidt on a weekly basis. On appeal, Schmidt fails to explain how HCC's 3.25 percent commission met or exceeded a usurious interest rate. As best we can glean from Schmidt's

argument, it was the cumulative effect of HCC's imposition of its 3.25 percent commission, compounded at each of the approximately fifty-seven such transactions on the initial transaction, that amounted to a usurious interest rate.

Appellees respond by highlighting the Grahams' testimony that Schmidt was charged commissions in the same manner as any other customer and that the commissions assessed depended on the gross sales total, which varied from week to week. Appellees reference *First USA Management, Inc. v. Esmond*, 960 S.W.2d 625, 628 (Tex. 1997), for its pronouncement that "uncertainty in the value of a contractual right that a debtor claims is interest casts doubt on whether that value can be characterized as interest." According to appellees, because the amount HCC charged was contingent and uncertain until each sale was complete, the trial court correctly concluded, as a matter of law, that the charges about which Schmidt complains were not interest.

The uncertainty that appellees emphasize militates against Schmidt's factual sufficiency challenge. In this case, each weekly auction contained an indefinite number of rams because Schmidt, as both the seller and buyer, controlled the transaction quantity. Therefore, the weekly sale that Schmidt uses to fashion his usury claim does not constitute the overwhelming weight that he posits. The trial court, as the factfinder, may have found that the uncertainty in each week's sale precluded the payments HCC remitted to Schmidt as the seller from being classified as loans and the commission as interest. Accordingly, we cannot say that factual findings six and seven are so weak, or so contrary to the overwhelming weight of all the evidence, that these findings should be set aside and a new trial ordered on Schmidt's usury claim. *See Pool*, 715 S.W.2d at 635. We overrule Schmidt's first issue.[2]

---

[2] Schmidt alleged that the Grahams were "doing business as" the Hamilton Commission Company because they were sole proprietors of it rather than LLC members of HCC. For this reason, Schmidt requested that the trial court pierce HCC's corporate veil and hold the Grahams personally liable. The Grahams filed a verified denial asserting that they could not be sued as "d/b/a Hamilton Commission Company." In what we construe as Schmidt's second issue, he

## C.  Defamation

In Schmidt's third issue, he challenges the factual sufficiency of the trial court's factual finding supporting the denial of his defamation claim. "Defamation's elements include (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases." *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015) (orig. proceeding). The requisite degree of fault depends on the status of the plaintiff; "[a] private individual need only prove negligence, whereas a public figure or official must prove actual malice." *Id*. However, even where the plaintiff is a private individual, "[i]f the circumstances support application of [a] qualified privilege, the plaintiff must prove that the defendant acted with actual malice, rather than mere negligence, in publishing the statement." *Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 610 (Tex. App.—San Antonio 2018, pet. denied) (quoting *Espinosa v. Aaron's Rents, Inc.*, 484 S.W.3d 533, 543 (Tex. App.—Houston [1st Dist.] 2016, no pet.)). We have held that reporting a crime to law enforcement generally gives rise to a qualified privilege. *Elkins*, 553 S.W.3d at 610.

Regarding Schmidt's defamation claim, the trial court found:

> 10.  Schmidt also failed to prove by a preponderance of the evidence that McFarlin made her statement with the requisite degree of fault. To the contrary, the Court finds based on the credible evidence that McFarlin lacked the subjective intent necessary to establish actual malice, which was Schmidt's burden to prove. Alternatively, the Court finds that McFarlin did not make the statement negligently.

Schmidt challenges factual finding ten in two ways.

First, Schmidt argues, in factual sufficiency terms, that the trial court should not have held him to an actual malice standard. Instead, Schmidt posits that, as a private individual, he need only have established that McFarlin's statement to Special Ranger Wills was negligent. Schmidt

---

challenges the factual sufficiency of the trial court's findings that rejected his contention. In light of our determination of Schmidt's first issue, we need not address his second issue. *See* TEX. R. APP. P. 47.1.

reads our opinion in *Elkins* as holding that "[w]hile statements made to law enforcement enjoy a qualified privilege, that privilege should apply only to true statements." Schmidt highlights Special Ranger Wills' deposition testimony, read into the record, that McFarlin did not tell him that Schmidt was afforded a credit or charge arrangement. Schmidt, through counsel, asked Special Ranger Wills: (1) "So if it's a charge account, he didn't steal those animals, he's just a deadbeat debtor?"; and (2) "a deadbeat debtor can't be prosecuted, right?" Special Ranger Wills answered "correct" to both questions. Schmidt emphasizes that, in light of Special Ranger Wills' testimony, McFarlin made a "material misrepresentation" that precludes her from enjoying a qualified privilege and burdening him with an actual malice standard.

Appellees respond that Schmidt misreads our holding in *Elkins*. Specifically, appellees argue that:

> truth or falsity is captured in the first [defamation] element . . . . Rather than limit qualified privilege to "true statements" or supporting the idea that "[a] false statement cannot enjoy a privilege," . . . *Elkins* lays out the settled rule that qualified privilege changes the plaintiff's burden of proof from mere negligence to actual malice.

Construing Schmidt's contention in the factual sufficiency terms presented, we conclude that Schmidt argues that before McFarlin's report to Special Ranger Wills may enjoy qualified privilege status, there must be factually sufficient evidence that her report did not contain a "material misrepresentation." Assuming without deciding that Schmidt has accurately articulated the threshold to the qualified privilege rule, factually sufficient evidence supports the trial court's determination that McFarlin's report to Special Ranger Wills did not contain a material misrepresentation. Although Schmidt emphasizes Special Ranger Wills' recollection of his conversation with McFarlin, her written statement to Special Ranger Wills acknowledges that "Jim [Schmidt] bought animals on a Monday and would pay for them in full the following Monday . . . ." The trial court may have reconciled Special Ranger Wills' recollection of his conversation

with McFarlin with her written statement in concluding that she did not make a material misrepresentation.

Second, Schmidt argues that the factual finding "that McFarlin lacked the subjective intent necessary to establish actual malice" is factually insufficient because McFarlin's: (1) failure, as he previously argued, to disclose Schmidt's "credit or charge arrangement" to Special Ranger Wills was a material misrepresentation; and (2) report to Special Ranger Wills was an attempt to coerce Schmidt to pay his debt.

Appellees counter that Schmidt's two points fail because he provides neither supporting legal authority nor appropriate record citations. Notwithstanding appellees' inadequate briefing assertion, they contend that Schmidt overstates Special Ranger Wills' testimony. They highlight McFarlin's written statement to Special Ranger Wills, noted above, which includes the sentence, "Jim [Schmidt] bought animals on a Monday and would pay for them in full the following Monday . . . ." as a counterweight to Schmidt's contention that McFarlin made a material misrepresentation by not telling Special Ranger Wills that Schmidt was afforded a credit or charge arrangement. Appellees also highlight that Special Ranger Wills obtained an arrest warrant based "upon everything" he had in his report, which included McFarlin's written statement. As for Schmidt's second argument, appellees highlight Schmidt's question of "would it be fair to say, you filed these criminal charges to collect that note and/or those charges," and McFarlin's answer of "[a]bsolutely not." Appellees also emphasize McFarlin's testimony that, in her lay opinion, Schmidt's failure to pay for the animals was theft.

As already noted, the trial court may have concluded that McFarlin's report to Special Ranger Wills did not contain a material misrepresentation. Additionally, McFarlin replied "[a]bsolutely not," to Schmidt's question of "would it be fair to say, you filed these criminal charges to collect that note and/or those charges?" Schmidt points to no other evidence regarding

McFarlin's subjective intent. In light of the forgoing, we cannot say that factual finding ten is so weak, or so contrary to the overwhelming weight of all the evidence, that finding ten should be set aside and a new trial ordered on Schmidt's defamation claim. *See Pool*, 715 S.W.2d at 635. We overrule Schmidt's third issue.

**D.      Breach of Contract**

Regarding HCC's breach of contract counterclaim, the trial court found:

12.     [HCC] pleaded and the Court tried a breach-of-contract claim against Schmidt based on a February 8, 2016, written agreement . . . .

13.     The February 8, 2016[,] agreement was a valid contract between [HCC] and Schmidt.

14.     Schmidt breached the contract by failing to pay as agreed.

15.     As a result of Schmidt's breach, [HCC] suffered damages in the amount of $105,370.66.

16.     The interest set in the February 8, 2016, agreement between [HCC] and Schmidt is 6% per annum.

In Schmidt's fourth issue, he argues that factual finding thirteen fails because it is "against the great weight and preponderance of the evidence and is manifestly unjust, because the February 8, 2016[,] agreement was between [the Grahams], individually and doing business as Hamilton Commission Company[,] and" Schmidt. Appellees respond by arguing that the "crux of Schmidt's argument is that he and the Grahams, d/b/a 'Hamilton Commission Company,' were the contracting parties and therefore [HCC] could not sue him for breach of contract." Appellees argue that Schmidt waived his contention by failing to contest the Grahams' verified pleading. Appellees further argue that Schmidt's concession that McFarlin was an agent for HCC undermines the factual sufficiency challenge his fourth issue attempts. Indeed, in Schmidt's brief, he argues that "Appellee McFarlin was an employee and agent for Dr. Charles W. Graham, Tyler Graham, HCC, and the LLC" and "Appellee McFarlin . . . [was an] authorized agent[] for [HCC]."

At trial, McFarlin testified that she was employed by the "Hamilton Commission Company." Schmidt's appellate argument regarding his fourth issue, which is devoid of any record references except to the trial court's factual findings, fails to reference any support for his contention that McFarlin may have been an "employee or agent" for the Grahams in their individual capacity. Analyzing Schmidt's capacity argument through the factual-sufficiency lens, we cannot say that factual finding thirteen is so weak, or so contrary to the overwhelming weight of all the evidence, that it should be set aside and a new trial ordered. *See Pool*, 715 S.W.2d at 635. We overrule Schmidt's fourth issue.

### III. CONCLUSION

We affirm the trial court's judgment.

Rebeca C. Martinez, Chief Justice