In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-20-00232-CV

ANTHONY MONTANO, CHRISTINE MONTANO,
AND MICHAEL ROSMAN, Appellants

V.

KYLE CRONAN, Appellee

On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 20-06-06390-CV

**MEMORANDUM OPINION**

In this accelerated interlocutory appeal, Appellants Anthony Montano, Christine Montano, and Michael Rosman ("Defendants" or "Appellants") appeal the trial court's order denying their motion to dismiss pursuant to the Texas Citizens Participation Act ("TCPA"). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001-27.011, 51.014(a)(12) (authorizing interlocutory appeal of an order denying motion to dismiss filed under TCPA section 27.003). The TCPA applies to "a legal action

1

[that] is based on or is in response to a party's exercise of the right of free speech, right to petition, or right of association or arises from any act of that party in furtherance of the party's communication or conduct described by Section 27.010(b)[.]" Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a).

We affirm.

## Background

Appellee Kyle Cronan ("Plaintiff" or "Appellee") filed an original petition against the Defendants for defamation. Cronan alleged that on May 7, 2020, Michael Rosman and Anthony Montano sent Cronan "harassing and defamatory statements" to Cronan's cell phone, alleging that Cronan "was sneaking about in the woods in order to take pictures of underage girls." In his petition Cronan also alleged that on May 13, 2020, Cronan was in the parking lot of Northshore Park when Anthony and Christine Montano pulled up in their vehicle and "openly[]" accused Cronan of being a "pervert" and a "pedophile[,]" in front of a Woodlands Township employee. Cronan alleged that these statements were defamatory per se, they caused Cronan's reputation to be severely injured, and that Cronan suffered extreme mental anguish, public humiliation, and embarrassment.

The Defendants subsequently filed a motion to dismiss pursuant to the TCPA. Therein, the Defendants argued that the lawsuit is based on Defendants' exercise of the right of free speech and the alleged defamatory statements on their face are about

2

matters of public concern—"the privacy interests of underage girls Plaintiff was photographing and the criminal nature of Plaintiff's activity[.]"

In his response to the Defendants' motion to dismiss, Cronan argued that the court should deny the motion because there is clear and specific evidence of each element of Cronan's claim for defamation, and damages are presumed because Defendants' statements about Cronan that he is "a pervert, a pedophile, and a sexual deviant" are defamatory per se. In an affidavit attached to his response, Cronan stated that he and the Defendants are all involved in competitive rowing and are affiliated with rival clubs—Parati Competitive Rowing ("Parati") and the Rowing Club of the Woodlands. Cronan further alleged that the Defendants "hold significant resentment towards [Cronan] stemming from the injury to [his] daughter and ensuing fallout, the suit concerning those injuries, and [Cronan's] participation in the SafeSport complaints to US Rowing and US Rowing's subsequent investigation." Cronan also stated in his affidavit that Parati had violated numerous regulations relating to COVID-19 and general student safety.

Cronan stated in his affidavit that, on May 13, 2020, he arrived at the parking lot near the rowing boathouses at Northshore Park shortly after an incident "in which Defendants, along with a number of kids and adults involved with Parati, had assaulted and attacked Ken Torrance." According to Cronan, while Cronan was talking with an employee of The Woodlands Township, Trohn Trabona, whom

3

Cronan understood was there to investigate the incident involving Defendants, Parati and Torrance, Michael Rosman pointed at Cronan and yelled across the parking lot "There is the other pervert!" and multiple families, adults, and children were present. Cronan stated in his affidavit that Trabona heard what Rosman yelled at him and said to Cronan, "Did he just call you a pervert?" Cronan further stated in his affidavit that the Montanos then stopped their vehicle near where Cronan was sitting with Trabona, they rolled down the window of their vehicle, and they shouted "That guy is a pedophile! He is a pervert! Watch your kids—h[e] is a pervert! [] Taking pictures of girls, you pedophile!" According to Cronan, Trabona commented on these accusations and "a multitude of families and other adults and children [were] around and well within earshot." According to Cronan, students in the area recorded the incident and posted it to social media, which caused Cronan and his daughter shame and embarrassment. Cronan further stated in his affidavit that the Defendants knew that Cronan was not a pervert or a pedophile, that their purpose was to falsely accuse Cronan of being a sexual deviant to damage his reputation, and that their actions were consistent with other acts Defendants took to "get back" at him.

Cronan denied being a pervert or pedophile or having unnatural sexual attractions to minors. Cronan alleged that Defendants' accusations were "simply meant to discredit Plaintiff and to retaliate against him for reporting SafeSport violations to US Rowing and for suing Defendants and Parati Competitive Rowing

4

for the injuries they inflicted on Plaintiff's minor daughter." Cronan argued that he had provided sufficient facts to state a prima facie claim for defamation because he had alleged that the Defendants made false defamatory statements (calling him a pervert and pedophile), the statements were made publicly where others could hear them, and no proof of damages is required because the statements were defamatory per se. Even so, Cronan alleged that he has lost clients in his work as a financial advisor because of the statements, and that his reputation has been damaged. Cronan further asserted that he has lost sleep due to embarrassment and shame, and the incident has strained his relationship with his daughter.

At a hearing on the motion to dismiss, the Defendants argued that Cronan "was suspended from the Parati Rowing Club for three months and started photographing the minors while working out in order to create some evidence of violations of the club rules and US Rowing rules." Defendants argued that there was no evidence that the alleged defamatory statements were made except for Cronan's own testimony. The Defendants also argued that Cronan's denial that he is a pedophile is inadequate and an expert opinion would be required, that actual malice is required to prove defamation per se and that "qualified privilege [] applies when they're reporting a criminal activity[]" because Cronan's affidavit alleged that the Township employee was investigating another incident at the time.

Cronan argued that his affidavit specifically identified the statements made, by whom, where they were made, and that they were made publicly. Cronan also argued the statements were defamatory per se because they were allegations of serious sexual misconduct, that no privilege for reporting a crime applies, even if Trabona was there investigating another incident, because "[t]his is people yelling across parking lots, yelling out of cars in front of groups of children."

The trial court signed an order denying Defendants' motion to dismiss under the TCPA. Defendants timely filed their notice of appeal.

## Issues

In their first issue, Appellants argue that their speech was protected under the TCPA because the statements attributed to them constitute communications about a matter of public concern because of the privacy interests of the underage girls Cronan was photographing and the perceived criminal nature of Cronan's activity.

In Appellants' second issue, Appellants argue that Cronan did not present clear and specific evidence of the elements of a defamation claim against Appellants. According to Appellants, Cronan failed to present clear and specific evidence of publication, he did not present an affidavit from anyone who actually heard the alleged defamatory statements, the text messages on which Cronan relies were not sent to a third party, Cronan presented no evidence that the incidents were published to social media, and Cronan relies solely on his own affidavit. Appellants also argue

6

that Cronan is unable to establish the statements about him are false because "they are neither factual nor supported by any expert testimony." Appellants further argue that Cronan did not present clear and specific evidence of actual malice, which is required because a qualified privilege applies to reporting criminal activity. Appellants argue that the statements attributed to them were made in connection with a criminal investigation because Cronan's affidavit alleged that the incident at Northshore Park occurred when Trabona was there to investigate the altercation involving Defendants, Parati and Torrance. Appellants also argue that, even if actual malice is not required, Cronan's allegations are deficient because he did not present evidence that the Appellants knew their alleged statements were false.

Analysis

A three-step burden shifting mechanism is triggered by the filing of a motion to dismiss under the TCPA. *In re Lipsky*, 460 S.W.3d 579, 586-87 (Tex. 2015). The movant bears the initial burden to demonstrate that the legal action is based on or is in response to the movant's exercise of the right of free speech, the right of association, or the right to petition. Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b). If the movant meets his initial burden, the burden shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of his claim. *Id.* § 27.005(c). If the nonmovant fails to meet his burden, the trial court must dismiss the legal action. *See id.* If the nonmovant satisfies its burden, the trial court

7

must nevertheless dismiss the legal action if the movant establishes each essential element of a valid defense to the nonmovant's claim by a preponderance of the evidence. *Id.* § 27.005(d).

In determining whether the nonmovant's claim is subject to or should be dismissed under the TCPA, the court shall consider the pleadings, evidence a court could consider under Rule 166a of the Texas Rules of Civil Procedure and supporting and opposing affidavits stating the facts on which the liability or defense is based. *Id.* § 27.006(a). On appeal, the trial court's ruling on a motion to dismiss under the TCPA is reviewed de novo, and the pleadings and evidence are viewed in the light most favorable to the nonmovant. *Sanchez v. Striever*, 614 S.W.3d 233, 242 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *Maldonado v. Franklin*, No. 04-18-00819-CV, 2019 Tex. App. LEXIS 8747, at *7 (Tex. App.—San Antonio Sept. 30, 2019, no pet.) (mem. op.).

The TCPA protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern. *Lipsky*, 460 S.W.3d at 584. We construe the TCPA "liberally to effectuate its purpose and intent fully." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.011(b); *see State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018). The stated purpose of the Act "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by

8

law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002.

The burden is on the nonmovant to show by clear and specific evidence a prima facie case for each essential element of the claim in question, but it is not a heightened evidentiary burden. *See Andrews Cty. v. Sierra Club*, 463 S.W.3d 867, 867 (Tex. 2015) (per curiam) (citing *Lipsky*, 460 S.W.3d at 587). A "prima facie case" refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted. *See Lipsky*, 460 S.W.3d at 590 (citing *Simonds v. Stanolind Oil & Gas Co.*, 136 S.W.2d 207, 209 (1940)). It is the "'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (per curiam)). Therefore, in the context of a motion to dismiss under the TCPA in a lawsuit for defamation, mere notice pleading will not suffice to defeat the motion, and

> . . . a plaintiff must provide enough detail to show the factual basis for its claim. In a defamation case that implicates the TCPA, pleadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss.

*See id.* at 590-91. Conclusory statements in an affidavit are not sufficient to satisfy the TCPA's requirement of "clear and specific evidence" of a prima facie case. *See id.* at 592. Direct evidence of damages is not required, but the evidence must be

9

sufficient to allow a rational inference that some damages naturally flowed from the defendant's conduct. *S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018).

We may consider circumstantial evidence to determine whether the parties met their burdens under the TCPA. *See Sierra Club*, 463 S.W.3d at 867; *Lipsky*, 460 S.W.3d at 589. In conducting our analysis, "'we ascertain and give effect to the Legislature's intent as expressed by the language of the statute.'" *Harper*, 562 S.W.3d at 11 (quoting *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008)). We construe the statute's words according to their plain and common meaning, "unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results." *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018). We decide the applicability of the TCPA based on "a holistic review" of the pleadings and supporting and opposing affidavits. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018).

The TCPA defines the "[e]xercise of the right of free speech" as "a communication made in connection with a matter of public concern." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3). The TCPA also defines "[m]atter of public concern" as:

> . . . a statement or activity regarding:
> (A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity;

10

        (B) a matter of political, social, or other interest to the community; or
        (C) a subject of concern to the public.

*Id.* § 27.001(7). The phrase "matter of public concern" commonly refers to matters "of political, social, or other concern to the community," and a subject of general interest and of value and concern to the public, as opposed to purely private matters. *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 135 (Tex. 2019) (citing *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017)); *see also ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900 (Tex. 2017) (explaining that communications related to health and safety are a matter of public concern under the TCPA) (citing *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 510 (Tex. 2015)). "Speech deals with matters of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)); *see also Creative Oil & Gas, LLC*, 591 S.W.3d at 135. Public matters include, among other things, "'commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions.'" *See Brady*, 515 S.W.3d at 884 (quoting *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975)). A "matter of public concern" includes an issue related to health, safety, or community well-being. *See ExxonMobil Pipeline Co.*, 512 S.W.3d at 899. To be protected under the TCPA, the communication at issue need not specifically mention the matter of public concern. *See Gensetix, Inc. v. Baylor Coll. of Med.*, 616 S.W.3d 630, 641

11

(Tex. App.—Houston [14th Dist.] 2020, pet. dism'd) (citing *ExxonMobil Pipeline Co.*, 512 S.W.3d at 900). In addition, the communication need not have more than a tangential relationship to a matter of public concern. *See ExxonMobil Pipeline Co.*, 512 S.W.3d at 900.

In determining whether the statements attributed to the Defendants are "a matter of public concern" under the TCPA, we are not required to determine the truth or falsity of those statements. *See Lipsky*, 460 S.W.3d at 543. Defendants argue there is "a strong public interest in protecting children from physical and sexual abuse." *See Bird v. W.C.W.*, 868 S.W.2d 767, 772 (Tex. 1994). And the Defendants argue that "reports of criminal activity have been considered matters of public concern in other cases for the purpose of determining whether the TCPA applies." *See Adams*, 547 S.W.3d at 897 (explaining that the TCPA applies to statements about an HOA's alleged criminal activity); *Robert B. James, DDS, Inc., v. Elkins*, 553 S.W.3d 596, 619-20 (Tex. App.—San Antonio 2018, pet. denied) (explaining that the TCPA applies to statements made to the police and an insurance company alleging misappropriation and theft of property against a dentist).

The pleadings and evidence in this case reflect that the communications arise out of the parties' participation in competitive rowing clubs and involvement with US Rowing. In his affidavit, Plaintiff averred that he had reported that one of the rowing clubs had violated US Rowing regulations related to COVID-19 and student

12

safety and US Rowing had made an investigation of SafeSport complaints. Plaintiff stated that he had filed a separate lawsuit for injuries his daughter sustained at one of the rowing clubs. Plaintiff alleged that the statements made by the Defendants on May 13, 2020, occurred "in the parking lot near the rowing boathouses at Northshore Park" and occurred shortly after an incident in which the Defendants were involved and during which someone was "assaulted and attacked[.]" At the time the allegedly defamatory comments were made, Plaintiff was talking with a Township employee who was present to investigate the altercation. According to Plaintiff, Defendants' communications occurred in the presence of "a multitude of families and other adults and children[.]"

Considering the record as a whole, we conclude that the statements attributed to the Defendants are not purely private matters, and they were based on or were in response to a party's exercise of the right of free speech and pertain to "a subject of general interest and of value and concern to the public" because of the involvement of the rowing clubs, US Rowing, and safety and welfare concerns. *See Snyder*, 562 U.S. at 444; *ExxonMobil Pipeline Co.*, 512 S.W.3d at 899; *Creative Oil & Gas, LLC*, 591 S.W.3d at 136. Plaintiff's lawsuit is factually predicated on the Defendants' alleged communications, and the Defendants sufficiently demonstrated their communications were within the scope of the TCPA. *See Dyer v. Medoc Health*

13

*Servs., LLC*, 573 S.W.3d 418, 428 (Tex. App.—Dallas 2019, pet. denied); *see also*

*Adams*, 547 S.W.3d at 897.[1]

The burden then shifted to Cronan to establish by clear and specific evidence

the elements of his defamation claim. The elements of a defamation claim are (1) the

publication of a false statement of fact to a third party, (2) that was defamatory

concerning the plaintiff, (3) with the requisite degree of fault, and (4) in some cases,

damages. *Lipsky*, 460 S.W.3d at 593 (citing *WFAA-TV, Inc. v. McLemore*, 978

S.W.2d 568, 571 (Tex. 1998); *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys.*

*Landfill, Inc.*, 434 S.W.3d 142, 146 n.7 (Tex. 2014)). The status of the person

allegedly defamed determines the requisite degree of fault. *Id.* A private individual

need only prove negligence, whereas a public figure or official must prove actual

malice. *Id.*

The plaintiff must plead and prove damages, unless the defamatory statements

are defamatory per se. *Id.* Defamation per se refers to statements that are so

obviously harmful that general damages may be presumed. *Id.* "[A]ccusing someone

of a crime, of having a foul or loathsome disease, or of engaging in serious sexual

---

[1] The Texas Supreme Court has explained that at this stage of the litigation, we do not decide whether the challenged communications were "valid, partly valid, or completely concocted[.]" *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018). Because we conclude that the communications allegedly made on May 13, 2020, pertain to communications made in connection with a matter of public concern as encompassed under the TCPA, we need not also address the text messages made on or about May 7, 2020. *See* Tex. R. App. P. 47.1.

misconduct" constitutes defamation per se. *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 638 (Tex. 2018) (citing *Lipsky*, 460 S.W.3d at 596; *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.)). Whether a statement is defamatory per se is generally a question of law. *See Lipsky*, 460 S.W.3d at 596.

In this case, Plaintiff's claim for defamation arises from (1) allegations about certain text messages he received from Michael Rosman and Anthony Montano on or about May 7, 2020, and (2) allegations about verbal statements Defendants made on May 13, 2020, at Northshore Park. We examine the evidence as to each.

Plaintiff did not present any evidence that the text messages were published to a third party, which is an essential element of a claim for defamation. Therefore, we cannot say there is clear and specific evidence of a prima facie claim for defamation based on the text messages.

Next, we examine the evidence as to the verbal statements allegedly made on May 13. Cronan stated in his affidavit that Michael Rosman pointed at him and yelled, "There is the other pervert." Cronan further alleged that Anthony and Christine Montano shouted at him and said, "That guy is a pedophile! He is a pervert! Watch your kids—h[e] is a pervert! [] Taking pictures of girls, you pedophile!" Because these statements are accusations of serious sexual misconduct, we conclude they are defamatory per se and that Cronan has presented clear and specific evidence

15

of "what was said" and "the defamatory nature of the statements." *See Lipsky*, 460 S.W.3d at 591, 596; *Tatum*, 554 S.W.3d at 638. Cronan stated in his affidavit that the statements were made in Northshore Park on May 13, 2020, and that numerous children and adults were present and within earshot of the Defendants when they made the alleged statements, and he specifically named at least one person he knew had overheard the comments. Accordingly, we conclude that Cronan presented clear and specific evidence of "when" and "where" the statements were made. *See Lipsky*, 460 S.W.3d at 591.

Because we conclude that the statements are defamatory per se, Cronan need not prove actual damages. *See id.* at 593, 596 ("Pleading and proof of particular damage is not required to prevail on a claim of defamation per se[]" nor to defeat a TCPA motion to dismiss.). Nevertheless, Cronan's affidavit alleged that he has lost clients in his business as a financial advisor, his relationship with his daughter has been strained, and he has suffered embarrassment, shame, and difficulty sleeping. Cronan's affidavit therefore presented clear and specific evidence of how Defendants' statements damaged him. *See id.* at 591; *see also Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 418 (Tex. 2020) (explaining that in Texas defamation suits, damages for injury to reputation, personal humiliation, and mental anguish and suffering are considered general damages).

16

To state a prima facie claim, Cronan must also present evidence of negligence. *See Lipsky*, 460 S.W.3d at 593. Cronan's affidavit alleged that the Defendants knew he is not a pervert or pedophile. Cronan also alleged that the Defendants "hold significant resentment" towards Cronan over events connected to the parties' participation in rowing clubs, Cronan's participation in SafeSport complaints to US Rowing and US Rowing's subsequent investigation, and a separate lawsuit Cronan filed concerning his daughter's injuries. Cronan argued in his response to the motion to dismiss, that the parties are affiliated with rival rowing clubs, and the Defendants "have been unable to leave any rivalry in the domain of sportsman-like competition [and] have attempted to engage in a smear campaign by casting Plaintiff as a sexual pervert and pedophile." On this record, we conclude that Cronan has presented at least circumstantial evidence that Defendants acted negligently when making the statements that are the subject of the lawsuit. *See French v. French*, 385 S.W.3d 61, 73 (Tex. App.—Waco 2012, pet. denied) ("The plaintiff must show that the defendant knew or should have known that the defamatory statement was false.").

Defamation also requires publication to a third party. *Lipsky*, 460 S.W.3d at 593. Publication occurs if the defamatory statements are communicated orally, in writing, or in print to some third person who is "capable of understanding their defamatory import and in such a way that the third person did so understand." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017). Cronan's affidavit

17

alleged that Defendants' statements in Northshore Park occurred "within earshot" of "multiple families, adults, and children[.]" Cronan also alleged that some students who were present at the time recorded the incident and posted it to social media and that his daughter had seen the social media posts. According to Cronan's affidavit, after Rosman shouted "There is the other pervert!", the Township employee with whom Cronan had been talking, said to Cronan, "Did he just call you a pervert?"

Appellants argue that Cronan's allegations that his daughter saw social media postings of the incident and the statement by Trabona are inadmissible hearsay offered for the truth of the matter asserted. According to Appellants, "the Court should not consider Cronan's conclusory and speculative statements about what unidentified bystanders may have heard or understood[.]" The trial court did not rule on the hearsay objections but stated:

> If Mr. Cronan testifies that it was a statement that was made to him and to this person from the township, why is his affidavit insufficient to provide me with some evidence of that fact? [] I don't know if it's hearsay considering that the whole allegation is that it's defamatory.

Cronan argued:

> [T]he Plaintiff is fully within his ability to provide an affidavit about what he has personal knowledge of. All he needs are basic facts, all of which are in his personal knowledge: the fact that who said what, what was said, where it was said, when it was said.

18

Appellants failed to preserve their hearsay objection to the affidavit by failing to obtain a ruling from the trial court. *See* Tex. R. App. P. 33.1.[2]

We note that under the TCPA, when determining whether a legal action is subject to or should be dismissed, the trial "court shall consider the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a). Based upon the record before us, we cannot say the trial court erred in denying the TCPA motion.

Cronan presented the trial court circumstantial evidence that Defendants' statements were published to a third party who was capable of understanding and did understand the statements to be defamatory. *See Rincones*, 520 S.W.3d at 579. Viewing the pleadings and evidence in the light most favorable to the nonmovant, we conclude that Cronan's affidavit presented clear and specific evidence of publication to a third party. *See Sanchez*, 614 S.W.3d at 242.

Appellees also claim a qualified privilege because "the statements attributed to [them] were made in connection with a criminal investigation and to report a crime." Where the plaintiff is a private individual, "'[i]f the circumstances support

---

[2] Cronan also argued that the automatic stay required when a TCPA motion to dismiss is filed precluded additional discovery, such as subpoenaing social media evidence. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.003(c) ("Except as provided by Section 27.006(b), on the filing of a motion under this section, all discovery in the legal action is suspended until the court has ruled on the motion to dismiss.").

application of [a] qualified privilege, the plaintiff must prove that the defendant acted with actual malice, rather than mere negligence, in publishing the statement.'" *Robert B. James, DDS, Inc.*, 553 S.W.3d at 610 (quoting *Espinosa v. Aaron's Rents, Inc.*, 484 S.W.3d 533, 543 (Tex. App.—Houston [1st Dist.] 2016, no pet.)). A qualified privilege exists for reporting a crime to law enforcement. *Id.*; *French*, 385 S.W.3d at 73; *Zarate v. Cortinas*, 553 S.W.2d 652, 655 (Tex. Civ. App.—Corpus Christi 1977, no writ) ("[T]he communication of alleged wrongful acts to an official authorized to protect the public from such acts is a qualified privilege."); *cf. Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995) ("[A]n employer has a conditional or qualified privilege that attaches to communications made in the course of an investigation following a report of employee wrongdoing."). Defendants who assert a qualified privilege bear the burden of proving their statement is covered by the privilege. *See Neely v. Wilson*, 418 S.W.3d 52, 62, 67-69 (Tex. 2013); *Saudi v. Brieven*, 176 S.W.3d 108, 118 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

In this case, Defendants argued that a qualified privilege applies to the statements they allegedly made on May 13, 2020, because they were made "while a Woodlands Township employee [] was allegedly investigating an altercation that had just occurred." According to the Defendants, Cronan's affidavit "indicates the

statements attributed to Defendants were made in connection with a criminal investigation and to report a crime."

Alleging that someone is a "pervert" or a "pedophile" does not necessarily impute a specific crime although the words may indeed have a disparaging implication. As commonly understood, to call someone a "pervert" implies that person is "one that has been perverted specifically [] one given to some form of sexual perversion." *Pervert*, Merriam-Webster, https://www.merriam-webster.com/dictionary/pervert (last visited July 1, 2021). Similarly, as commonly understood, to call someone a "pedophile" implies that person is "one affected with pedophilia," which is defined as a "sexual perversion in which children are the preferred sexual object specifically [] a psychiatric disorder in which an adult has sexual fantasies about or engages in sexual acts with a prepubescent child." *Pedophile*, Merriam-Webster, https://www.merriam-webster.com/dictionary/pedophile (last visited July 1, 2021); *Pedophilia*, Merriam-Webster, https://www.merriam-webster.com/dictionary/pedophilia (last visited July 1, 2021).

In the context in which these words were used in our facts, the Defendants allege they were reporting a crime at the time they used the words to refer to the Plaintiff. But Defendants failed to identify the investigator and Woodlands Township employee as a law enforcement officer, nor do they establish that they were reporting a crime at the time they yelled the statements and allegations in the

21

park. Cronan's affidavit alleges that the Woodlands employee was investigating a different matter and "altercation" involving the Defendants, and not the allegations the Defendants yelled at Plaintiff. We conclude that the Defendants failed to meet their burden to show that the statements attributed to them were privileged because they were made when reporting a crime. *See Neely*, 418 S.W.3d at 62, 67-69.

On the record before us, after viewing the pleadings and evidence in the light most favorable to the nonmovant, as we must,[3] we conclude that Cronan presented clear and specific evidence to state a prima facie claim for defamation that is sufficient to defeat Defendants' motion to dismiss under the TCPA, and the Defendants did not demonstrate that the claim was barred by a particular affirmative defense. Therefore, we cannot say that the trial court erred in denying Defendants' motion to dismiss under the TCPA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c) ("The court may not dismiss a legal action under [the TCPA] if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question."); *ExxonMobil Pipeline Co.*, 512 S.W.3d at 899. We overrule Appellants' second issue, and we affirm the trial court's order.

---

[3] *See Sanchez v. Striever*, 614 S.W.3d 233, 242 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *Maldonado v. Franklin*, No. 04-18-00819-CV, 2019 Tex. App. LEXIS 8747, at *7 (Tex. App.—San Antonio Sept. 30, 2019, no pet.) (mem. op.).

AFFIRMED.

                                        _____

                                          LEANNE JOHNSON
                                             Justice

Submitted on June 23, 2021
Opinion Delivered July 15, 2021

Before Kreger, Horton and Johnson, JJ.