Opinion issued June 22, 2023



In The

# Court of Appeals

For The

# First District of Texas

————————————

NO. 01-21-00399-CV

————————————

**STEPHEN PAINE, JANNA MCCARTER PAINE AS TRUSTEE FOR STEPHEN B. PAINE FAMILY TRUST, STEPHEN BARTLETT PAINE, JR., WILLIAM EDWARD PAINE, AND LEANNE PATRICIA PAINE, Appellants**

**V.**

**JAMES M. GOLDEN, AUTOMATED CASH, INC., AND AUTOMATED ATM SERVICE CORPORATION, Appellees**

On Appeal from the 151st District Court
Harris County, Texas
Trial Court Case No. 2016-87802

## MEMORANDUM OPINION ON REHEARING

Appellees James M. Golden, Automated Cash, Inc. ("ACI"), and Automated

ATM Service Corporation ("ASC") filed a motion for rehearing of our December

20, 2022 opinion. We deny the motion for rehearing, withdraw our opinion and judgment of December 20, 2022, and issue this memorandum opinion and judgment in their stead. Our disposition remains the same.

This is an appeal from the trial court's summary judgment. Appellant Stephen Paine and appellee James M. Golden created appellees Automated Cash Inc. ("ACI") and Automated ATM Service Corporation ("ASC"). Paine transferred his ownership interests in both companies to Janna McCarter Paine, as trustee of the Stephen B. Paine Family Trust, to be held for the benefit of his three (now-adult) children, appellants Stephen Bartlett Paine, Jr., William Edward Paine, and Leanne Patricia Paine (collectively, "the Trust").

When a dispute arose about the management and finances of the companies, Paine, who maintains that he is a director of both ACI and ASC, and the Trust sued Golden, ACI, and ASC seeking access to books and records, an accounting, and a declaration that Paine was a director of the companies. The appellants alleged breach of fiduciary duty, alleging, in part, that under Golden's leadership more than $1,000,000 was missing or had been stolen. The appellants also alleged that Golden took invalid actions on behalf of the companies, including making distributions to himself in excess of the distributions made to the Trust.

After an audit determined that there was a $1,019,000 accounting error, which did not represent money missing from the businesses, the trial court granted

2

summary judgment in favor of Golden, ACI, and ASC. The court also determined that Paine was not a director based on the doctrine of judicial estoppel. The trial court later awarded attorney's fees under the Uniform Declaratory Judgments Act. *See generally*, TEX. CIV. PRAC. & REM. CODE §§ 37.001–.011. Paine and the Trust appealed.

On appeal, the appellants raise 15 issues regarding the court's rulings on: (1) motions to show authority; (2) directorship; (3) pretrial evidentiary rulings; (4) summary judgment; and (5) Paine's application for appointment of a receiver.

Because we conclude that the appellees did not conclusively prove their entitlement to summary judgment, we reverse the summary judgment and remand to the trial court for further proceedings.

### Background

### I. Paine and Golden enter the ATM business and create ACI and ASC.

Paine and Golden formed ACI in 1997 to operate in the ATM business. Under ACI's articles of incorporation, the "number of initial Directors is one," and the initial director was James M. Golden. According to Paine, two days after ACI was formed, he and Golden had a meeting at which they organized ACI "according to forms and documents prepared by our counsel." At that meeting, 500 of the 1,000 authorized shares of ACI were issued to Paine and 500 shares were issued to Golden. Paine averred that he and Golden were elected as the only directors of the

ACI board of directors. Golden was appointed president of ACI, and Paine was appointed secretary. Paine said there were no subsequent elections and that he continued to be an officer and director of ACI. Golden testified in his deposition that, when ACI was incorporated, Paine was a director of ACI. Immediately after the ACI stock issuance, Paine transferred ownership of his 500 shares to his wife, Janna McCarter Paine "to hold in trust for herself and [their] three children, Stephen Jr., William, and Leanne."

ASC was incorporated in Texas in 2007. According to the certificate of formation, Golden was the organizer, and both Golden and Paine were directors. Golden owns 50% of ASC and the other 50% is held by Janna McCarter Paine in trust for Paine's three children. Golden is the president of ASC, and Paine is the secretary or the vice-president.

ACI owns approximately 126 ATM machines throughout Houston, Dallas, and San Antonio. ACI self-funds 73 of the ATM machines, and the remainder of the ATM machines are leased to third parties, who fund them. To fund the machines, ACI relies on loans, which are personally guaranteed by Golden, from Chasewood Bank. The cash from the Chasewood Bank loans and the transaction fees from the 73 ACI-funded ATMs are maintained in a "cash inventory account" (ending in "944") at Chasewood Bank.

4

As president of both ACI and ASC, Golden manages the daily operations of the businesses. When Golden notices the cash inventory of an ATM is running low, he electronically transfers money from the cash inventory account to the Federal Reserve Bank, from which Garda Armored Car Services ("Garda") collects the cash, transports it to, and places it in the ATM machine.

When a customer withdraws money from an ATM, the value of the withdrawal and the withdrawal fees are transferred electronically from the customer's bank account to ACI's cash inventory account. ACI periodically transfers the transaction fees to an operating account at Amegy Bank (ending in "8640"). ASC generates no revenue and exists solely to service the ATM machines, when needed.

## II. Paine and Golden grow to distrust each other.

While Golden manages the daily operations of the businesses, Paine, who is an officer and maintains that he is also a director of both companies, reviews the books from time to time. Since at least 2014, Paine has been concerned about irregularities in financial statements and tax returns.

From 2014 through the end of 2016, Paine and Golden exchanged numerous emails. Paine demanded information, sought an accounting, and asked questions based on his investigations of the company books and procedures. Paine contended that approximately $1,000,000 was missing or had been stolen from the cash

inventory. Paine further claimed that "an additional $300,000 to $500,000 [was] wrongfully expensed in the corporate financial statements and tax returns." Paine accused Golden of self-dealing, breaching his fiduciary duties, and "attempt[ing] to cover [his] trail" by "demand[ing] the accountants 'wipe-out' and deduct $400,000 of equity from the 2015 balance sheet and corporate tax return."

Golden repeatedly informed Paine that ACI had paid the company's accountants to assist with Paine's requested audit. Golden accused Paine of stalling in completion of the audit, disputed Paine's accusations of self-dealing and wrongful conduct, maintained that no money was missing, and continually resisted Paine's attempts to alter business procedures and practices. Golden also accused Paine of self-dealing, writing: "There is a RAT, EMBEZZLER and THIEF in this company it's YOU YOU YOU."

In short, after years of acrimony, Golden and Paine were deadlocked.

## III. Paine and the Trust sue Golden, ACI, and ASC.

### A. The appellants plead various causes of action seeking access to company information and alleging breach of fiduciary duty and self-dealing by Golden.

In December 2016, Paine and the Trust filed suit against Golden, ACI, and ASC. They later amended their petition, and their live pleading at the time of judgment, the second amended petition, alleged that both ACI and ASC were "deadlocked at every level." They also alleged that a cursory review of the

financial statements and tax returns from 2010 through 2015 revealed "serious discrepancies," including a discrepancy of $1,519,200 reflected on the statements of cash flows but not on the balance sheets. Paine and the Trust alleged that this discrepancy meant that the money was "either missing or unaccounted" and that Golden had not explained the discrepancies. Paine and the Trust also alleged that a $400,000 adjustment to the cash inventory balance "represent[ed] the disappearance of $400,000 in twenty-dollar bills, with no explanation." Finally, Paine alleged that both he and Golden had "from time to time received informal or de facto dividends through personal expenses paid by the corporations or informal payments" from ACI. Paine asserted that "Golden's de facto dividends have greatly exceeded the payments made to or for the benefit of Paine and the Trust, thus denying [Paine and the Trust] their right to a proportional share in the profits of the corporation."

Paine and the Trust pleaded the following causes of action:

1. <u>Writ of mandamus</u>: Paine sought a writ of mandamus requiring ACI and ASC to permit him to inspect and copy all their books and records. Paine also sought attorney's fees.

2. <u>Invalidity of corporate acts</u>: Paine and the Trust sought an order declaring certain corporate actions invalid under section 21.914 of the Business Organizations Code ("Proceeding Regarding Validity of Defective Corporate Acts and Shares") and chapter 37 of the Texas Civil Practice and Remedies Code (the "Uniform Declaratory Judgments Act"). Paine and the Trust also sought: (i) a complete audit of all of ACI's and ASC's financial records from inception, (ii) the imposition of a constructive trust, (iii) an order that the ACI and ASC pay the trust "its fair share of de

7

facto dividends" or that Golden return any disproportionate distributions, (iv) that Golden pay the costs of the accounting to the corporation, and (v) a mandatory injunction requiring that the corporations adopt appropriate safeguards and financial controls, as approved by the Court. Paine and the Trust challenged the following specific corporate actions:

    a.     the $400,000 inventory write down;

    b.     the alleged failure to keep accurate accounting records;

    c.     the alleged refusal to audit the corporation's accounting records;

    d.     the alleged payment of disproportionate de facto dividends to Golden; and

    e.     Golden's handling of the cash inventory and alleged lack of implementation of safeguards for financial control.

3. <u>"Common law accounting and equitable relief" (breach of fiduciary duty)</u>: Paine and the Trust alleged that ACI and ASC committed "a breach of trust against the Trust." They alleged that Golden's knowing behavior made him jointly and severally liable for the breach of trust. They sought an accounting from the inception of the companies and equitable relief, including disgorgement of distributions and imposition of a constructive trust.

4. <u>Derivative claims</u>: The Trust alleged that ACI and ASC are closely held corporations and that Golden breached his fiduciary duties to the corporations and shareholders. They pleaded that "justice requires the derivative proceeding to be treated by the Court as a direct action brought by Plaintiffs for their own benefit and that the recovery be paid directly to the Plaintiffs."

5. <u>Declaratory judgment</u>: Paine sought a declaratory judgment that he is director of ACI and ASC by operation of the Texas Business Organizations Code. This cause of action was added in a second amended petition that was later struck as untimely filed. It was pleaded again in a second amended petition filed in April 2020 pursuant to a court order permitting amendment.

The appellees' live pleading at the time of judgment included the affirmative defense of judicial estoppel and a claim for attorney's fees.

**B.      All parties saw changes in legal representation in the trial court.**

Counsel for the appellants withdrew in March 2018, and the appellants were then pro se until M. Obaid Shariff of the Shariff Law Firm appeared in December 2018. Meanwhile, Golden, ACI, and ASC were represented by Kathleen Cynthia Pickett and N. Kimberly Hoesl, who also now represent them on appeal. In 2018, Pickett and Hoesl left the law firm of Hoover Slovacek and joined the Pickett Law Group. In April 2018, Pickett, Hoesl, and Gregory A. Savage of Hoover Slovacek filed an opposed motion to substitute counsel to allow the Pickett Law Group to substitute in for Hoover Slovacek. In the certificate of conference on the opposed motion to substitute counsel, Hoesl certified that she "emailed and spoke with *pro se* plaintiff Stephen Paine regarding the relief sought in this motion. Mr. Paine indicated that plaintiffs opposed the relief sought herein. About a week later, Pickett and Hoesl filed a supplemental certificate of conference, in which Hoesl certified: "[O]n April 27, 2018, I spoke with *pro se* plaintiff Stephen Paine regarding the relief sought in this motion. Mr. Paine indicated that plaintiffs do not oppose the relief sought in Defendants' April 18, 2018 Motion to Substitute Counsel." The motion was granted in December 2018.

**C. The appellants repeatedly challenged the authority of counsel to represent ACI and ASC and sought declaratory judgment on Paine's claim that he is a director of ACI and ASC.**

Appellants filed several motions challenging the authority of counsel to represent ACI and ASC, arguing that because Paine and Golden were both directors, unanimous consent was required for Golden to validly retain counsel for ACI and ASC.[1]

Paine also moved for summary judgment on his claim for a declaratory judgment that he is a director of both ACI and ASC. About a year after the first motion to show authority, the appellants moved for partial summary judgment on their newly pleaded claim for a declaratory judgment that Paine was a director of ACI and ASC. The summary-judgment evidence included Golden's affidavit and excerpts from Golden's deposition, which had been taken almost a year after he signed his affidavit. In his affidavit, Golden averred that he was the sole director of both companies, but in his deposition, he conceded that Paine was a director of the companies. The appellants argued that Golden's deposition testimony conclusively proved that Paine was a director of both companies. The court denied the motion for summary judgment, concluding that Golden's deposition testimony created a

---

[1]  The appellants filed three motions seeking an order striking the pleadings of ACI and ASC and requiring Hoesl and Pickett to withdraw from representation: (1) a motion to show authority filed in February 2019, which was denied on March 11, 2019; (2) a motion to reconsider the motion to show authority filed in March 2019, which was denied in April 2019; and (3) a second sworn motion to show authority filed in September 2020, which was denied the same month.

genuine issue of material fact that precluded partial summary judgment on the question of whether Paine is a director of ACI and ASC, "the very issue upon which Plaintiff moved."

### D. The trial court appointed an auditor, who filed an initial report and responses to the appellants' special exceptions.

#### 1. The audit

Meanwhile, in addition to litigating the question of directorship, the parties were also litigating the other claims. In August 2019, and on the appellants' motion, the trial court appointed the firm of Carr, Riggs, & Ingram, LLC, CPAs and Advisors ("CRI"), to perform an audit pursuant to Texas Rule of Civil Procedure 172. The trial court directed CRI to analyze ACI's—and if needed ASC's—financial accounts to determine the reason for the alleged $400,000 variance between the draft tax return and the tax return that was filed for fiscal year 2015. The audit was performed by Marc Berry and Miles Harper, both of whom are accountants and partners at CRI. Essentially, the audit consisted of reconciling ACI's records with the cash present in the company's accounts and ATM machines.

#### 2. The first auditor's report and response to exceptions

After CRI filed its first report, the appellants filed special exceptions seeking to clarify that there was a total discrepancy of $1,019,000 in the retained earnings account. The appellants also objected to a statement that there was no "evidence of

11

theft or fraudulent activity during the years the analysis covers," arguing that it was overly broad and conclusory.

The first report, as clarified by the responses to the special exceptions, reached the following conclusions:

- The reason for the $400,000 variance between the draft tax return and the tax return for the fiscal year 2015 was an overstatement of the ATM cash inventory.

- An additional adjustment to the final 2015 tax return in the amount of $619,000 was warranted, because the total overstatement of ATM cash inventory for that fiscal year was $1,019,000.

- Based on its analysis, "CRI did not find any evidence of theft or fraudulent activity during the years the analysis covers." This statement is "limited to the procedures performed in the analysis detailed in the report. These procedures, which were approved by both parties prior to us engaging in the work, were limited to the transactions from the Chasewood bank account ending in 944 which is associated with the ATM cash inventory. The ATM cash inventory is a separate balance presented on the 2015 tax return."

- "CRI did note a significant lack of accounting controls and accounting close procedures to reconcile operating activity each month, quarter and year-end."

**E.  February 2021 brings a flurry of motions, mostly related to the audit.**

**1.  The appellants' motions**

In February 2021, the appellants filed (1) a motion to appoint a receiver to rehabilitate the companies, (2) a motion for an expanded audit to determine the reason for the large accounting error, and (3) a motion for leave to conduct

discovery regarding documents that were produced in January 2021 while exchanging exhibits in anticipation of trial. These documents included pleadings from bankruptcy cases involving Paine.

## 2. The appellees' motions and pleadings

Also in February 2021, the appellees filed a motion for a pretrial ruling under Rule 166 of the Rules of Civil Procedure ("Pretrial Conference") on appellants' claims involving "theft or fraud." The appellees argued that, under Rule of Civil Procedure 172, the auditor's report conclusively proved that an overstatement of cash inventory led to the variance in the 2015 tax returns and that the appellees did not engage in fraud in connection with the allegedly missing $1,019,000.

Although this motion did not comply with the requirements for a motion for summary judgment under Rule of Civil Procedure 166a, the appellees sought a ruling that "per CRI's verified report, there is no evidence of theft or fraudulent activity by Defendants for the period of 2015 through June 2020, particularly including ACI's 2015 tax return, ACI's Cash Inventory Account, and ACI's retained earnings account."

The appellees also amended their answer and counterclaim, pleading the affirmative defense of judicial estoppel and pleading for attorney's fees under the Theft Liability Act and the Declaratory Judgments Act.

13

### 3. The hearing

At a hearing in February 2021, CRI's Harper testified that he recommended ACI amend its prior tax returns because the overstatement of the cash inventory account by about $1,000,000 resulted in an artificially increased tax burden to the company. Harper estimated that amending the tax returns could yield approximately $300,000 in tax benefits. With the agreement of all parties, the trial court ordered Harper and CRI to amend ACI's tax returns. Harper also testified that the audit procedures revealed no evidence of fraudulent activity, and the overstatement was an accounting error. He could not, however, identify any specific entry in ACI's financial records that was incorrect "primarily because they didn't have . . . what we consider an accounting system in place."

### 4. Trial court rulings

The trial court granted the appellants' motion for an expanded audit and ordered the auditor to:

> [R]eview [ACI] and [ASC's] (collectively, the "Defendant Companies") financial records, including profits and loan records, to determine (i) the total amount of the discrepancy beyond the $1,019,000 already uncovered (collectively, "Disputed Funds"); (ii) whether or not the Disputed Funds existed at one point or another in the corporate accounts of the Defendant Companies; (iii) the specific cause of the discrepancy; and (iv) if the Disputed Funds are the result of accounting error identify the specific errors on which you base such conclusions. The foregoing will be made into a report which is accompanied by an affidavit and submitted to the Court by April 2, 2021.

The trial court also entered an order requiring Harper to file amended federal tax returns for the years 2015 through 2019 to correct the overstated cash inventory discovered in the audit.

The trial court denied the motion for appointment of a receiver and the appellants' motion to reopen discovery to further investigate materials disclosed in January 2021. The court noted that the discovery motion was "DENIED WITHOUT PREJUDICE, depending, possibly, on the auditors' additional findings." The trial court also denied the appellees' motion for a pretrial ruling regarding the conclusivity of the auditor's report, stating that the denial was "without prejudice to refiling at the conclusion of the additional work ordered by this Court on February 16, 2021."

## F.     The second auditor's report

The second auditor's report, which was filed on April 2, 2021, concluded that the disputed funds never existed. Instead, the auditor concluded that the error arose from an earlier overstatement of debt and cash on hand. While the amount of debt owed had previously been corrected, no such corrections had been made to the cash on hand.

The appellees reurged their motion for a pretrial ruling on appellants' claims involving "theft or fraud." They supplemented their motion with the second auditor's report. The appellants asserted that the second audit report supported

their position and that they had two weeks left to timely file exceptions to the second audit report.

The trial court issued an order granting the appellees' requested pretrial ruling. The order included findings of fact that detailed the auditor's investigation. The trial court admitted into evidence the following statements, which were conclusions reached by the auditor, ruling that these statements were conclusive "as to the matters they cover":

1. After examination of all the bank accounts, loans, tax returns and accounting documents available for Defendants ACI and ASC from 2010 through July 2020, the only financial discrepancy identified by the Court-appointed auditors is the $1,019,000 overstatement of income identified in ACI's 2015 tax return.

2. The Court-appointed auditors found no financial discrepancy with respect to checks written by Defendant Golden to Defendant Golden out of the ACI operating account.

3. The $1,019,000 overstatement does not reflect money that actually existed.

4. There was no evidence of theft or fraudulent activity by Defendants relating to the $1,019,000 overstatement.

The trial court further stated: "This ORDER is not intended to be read to limit or preclude a trial regarding the alleged $386,737 discrepancy in disbursement between Plaintiffs and Defendants, however." This note referred to the allegation that Golden gave himself disbursements exceeding disbursements made to Janna in trust for Paine's adult children.

16

The trial court denied the appellants' motion to require CRI to file another verified report stating the amount of overpaid taxes.

**G.    The trial court grants a partial summary judgment in favor of the appellees.**

Also in April 2021, the appellees filed a combined traditional and no-evidence motion for summary judgment. The summary-judgment motion had two main contentions. First, the motion contended that all the appellants' claims, except for the declaratory judgment claim, arose under the Texas Theft Liability Act ("TTLA"). The appellees contended that there was no evidence of (1) theft or fraud regarding the overstatement of $1,019,000, and (2) improper distributions, or damages. They also contended that the auditor's report conclusively proved the absence of fraud. They sought attorney's fees as the prevailing party under the TTLA. Second, the motion contended that summary judgment should be granted on the declaratory judgment claim because they had conclusive evidence of two affirmative defenses: (1) judicial admission and (2) judicial estoppel. These defenses were based on statements made by Paine in two separate bankruptcy court cases.

In response, the appellants argued that they did not bring a cause of action under the TTLA, and they produced copies of the checks to Golden and email correspondence between Paine and Golden as evidence of wrongful, unequal distributions and damages. The appellants also argued that Golden, ACI, and ASC

did not establish all three elements of the affirmative defense of judicial estoppel. They also objected to summary judgment evidence on the grounds that the bankruptcy court documents were not authenticated.

On May 26, 2021, the trial court granted an interlocutory "traditional and no evidence" summary judgment. The order stated:

> First, the Court hereby OVERRULES Defendants' objections to Plaintiffs' summary judgment evidence. The Court likewise overrules Plaintiffs' authentication objections to Defendants' PACER summary judgment evidence.
>
> Second, the Court finds that the Plaintiffs have adduced no evidence, whether the cause of action is conversion or the Texas Theft Liability Act, that the checks written by Golden were improper or without any business justification, or otherwise wrongful. Further, the Court finds no evidence adduced by Plaintiffs that they were damaged by these checks.
>
> Third, the Court finds it is not bound by its prior rulings on the directorship issue as Defendants have timely raised a new defense of judicial estoppel. The Court finds as a matter of law that Plaintiffs are estopped from contending that Paine is a director of ACI and ASC.
>
> Fourth, the Court has, in a separate Order, ruled on the conclusivity of the auditors' findings as it relates to the lack of evidence of theft or fraud in connection with the overstated income in ACI's 2015 tax returns. That ruling remains undisturbed by this Order.
>
> It is therefore ORDERED that Defendants are awarded interlocutory summary judgment against Plaintiffs on Plaintiffs' affirmative claims, which are hereby DISMISSED WITH PREJUDICE, and on Defendants' claims under the Uniform Declaratory Judgment[s] Act (UDJA).

As to attorney's fees, Defendants contend that Plaintiffs have made claims under the Texas Theft Liability Act and that Defendants contend they are the successful party under said Act. The Court finds as a matter of law that Plaintiffs have NOT brought their claims under the Texas Theft Liability Act, but on the basis of common law conversion, and that therefore, there is no legal basis for an award of fees under that statute. However, the issue of attorney's fees remains to be determined under the Texas UDJA claim on which Defendants were the successful party in this litigation. The Court will consider any award of fees under that Act via submission when said request is promptly made and set for submission by Defendants.

The trial court later denied a motion to reconsider the interlocutory partial summary judgment, and it rendered final summary judgment incorporating an award of attorney's fees.

Paine and the Trust appealed.

**Analysis**

This is an appeal from a summary judgment. On appeal, Paine raised the following issues:

1. The trial court erred by refusing evidence at the hearing on the first motion to show authority.

2. The trial court erred by denying the motion for reconsideration of the first motion to show authority and by striking evidence associated with this motion.

3. The trial court erred by denying a motion for partial summary judgment regarding whether Paine was a director.

4. The trial court erred by denying the second sworn motion to show authority.

5. The trial court erred by denying multiple requests for additional discovery relevant to the judicial estoppel affirmative defense.

19

6.    The trial court erred by granting summary judgment on judicial estoppel because it was not timely pled.

7.    The trial court erred by denying multiple requests for appointment of a receiver under Texas Business Organizations Code § 11.404.

On appeal, the Trust raised the following issues:

1.    The trial court erred by granting summary judgment against each of the Paine Parties on the affirmative defense of judicial estoppel.

2.    The trial court erred by granting no-evidence summary judgment on all the Paine Parties' affirmative claims because the no-evidence motion for summary judgment was improper.

3.    The trial court erred by granting no-evidence summary judgment on appellants' affirmative claims. Golden, as fiduciary, had the burden of proof on the fairness of the challenged transactions.

4.    The trial court erred by entering a pretrial order establishing that the auditor's report conclusively disproved that Golden had converted more than $1,000,000. The trial court further erred by rendering final judgment based on this pretrial order.

5.    The trial court erred by granting no-evidence summary judgment on the common law or equitable accounting cause of action that sought a complete accounting of ACI and ASC from inception to present day.

6.    The trial court erred by denying the appellants' request for a supplemental auditor's report after a court order authorized amendment of ACI's tax returns.

7.    The trial court erred by denying the appellants' motion for reconsideration of the summary judgment after striking the testimony of the appellants' tax expert.

8.    The trial court erred by denying the appellants' motion for reconsideration of the summary judgment after striking the appellants' legal arguments.

The appellants have raised 15 issues. Although the appellants filed separate briefs, they all argued on behalf of the "Paine Parties," which they defined as all the appellants. We therefore will consider their issues together.

These issues generally fall into three categories: (1) issues that challenge rulings on appellants' motions to show authority; (2) issues that directly challenge the trial court's summary judgment; and (3) issues that directly challenge some other interlocutory ruling that might indirectly affect the summary judgment. Because we conclude that the motions to show authority were correctly decided and that the motion for summary judgment was not meritorious, we will sustain the first two issues raised in the "Trust's" brief, which directly attack the summary judgment. We will reverse the summary judgment in its entirety, and thus we do not need to reach the appellants' other issues.

## I. Motion to show authority

The appellants challenged the authority of counsel to represent ACI and ASC. In this court, the appellants argue that the trial court erred by refusing evidence at the hearing on the first motion to show authority, by denying a motion to reconsider the ruling on the first motion to show authority, and by denying the second motion to show authority.

A party to a lawsuit who believes that the suit is being prosecuted or defended without authority may file a sworn motion questioning the attorney's

authority to act. Tex. R. Civ. P. 12; *see In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d 53, 61 (Tex. 2019) (addressing Rule 12 dispute). "Rule 12 has long been the exclusive method for questioning the authority of an attorney to bring a suit." *Tanner v. Black*, 464 S.W.3d 23, 26 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (quoting *Phillips v. Phillips*, 244 S.W.3d 433, 435 (Tex. App.—Houston [1st Dist.] 2007, no pet.)); *see Angelina Cnty. v. McFarland*, 374 S.W.2d 417, 423 (Tex. 1964)). Originally, the primary purpose of Rule 12 was to protect defendants by enabling them to determine who had authorized the suit. *Angelina Cnty.*, 374 S.W.2d at 423; *Tanner*, 464 S.W.3d at 26. "A trial court's ruling on a motion to show authority is not a decision on the merits or determination of ultimate questions of fact." *Tanner*, 464 S.W.3d at 26 (citing *In re Guardianship of Benavides*, 403 S.W.3d 370, 374 (Tex. App.—San Antonio 2013, pet. denied)). "It is simply a pretrial determination of an attorney's authority to represent a party." *Id.*

We review a trial court's ruling on a motion to show authority for an abuse of discretion. *Tanner*, 464 S.W.3d at 26; *see Urbish v. 127th Judicial Dist. Court*, 708 S.W.2d 429, 432 (Tex.1986); *see also Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (holding that trial court abuses its discretion by acting without reference to guiding rules and principles). When a party has filed a motion to show authority, the challenged attorney bears the burden of proof "to show sufficient

authority to prosecute or defend the suit on behalf of the other party." TEX. R. CIV. P. 12. If the challenged attorney fails to show authority to act, "the court shall refuse to permit the attorney to appear in the cause, and shall strike the pleadings if no person who is authorized to prosecute or defend appears." *Id.*

*Murrin Brothers 1885* was an original proceeding on petition for writ of mandamus to the Supreme Court of Texas. 603 S.W.3d at 54. In the underlying case, "warring ownership factions" disputed the right to control a jointly owned "honky-tonk" called "Billy Bob's." *Id.* One faction unilaterally retained counsel for Billy Bob's, and the other faction challenged the law firm's authority, arguing that the company documents required unanimity to take such an action. *Id.* at 56. The trial court denied the motion to show authority. *Id.*

The Supreme Court of Texas denied mandamus relief, noting that mandamus requires both an abuse of discretion and the lack of an adequate legal remedy. *Id.* at 56–57. The Court assumed that denial of the Rule 12 motion was an abuse of discretion and concluded that the relator had not proven the lack of an adequate legal remedy. *Id.* at 61. In analyzing the issues, the Court explained that the ruling on the motion to show authority "was not a merits decision on ultimate issues such as the meaning of the company documents and control of the company moving forward." *Id.* The Court also noted that if the relator succeeded "on the merits,

23

whether at trial or on appeal," it could "pursue relief for losses suffered due to the unauthorized hiring" of the law firm. *Id.* at 62.

In this case, counsel for ACI and ASC presented evidence that Golden, as a director of ACI and ASC had retained counsel to represent both companies. This evidence included an affidavit from Golden and corporate resolutions for ACI and ASC authorizing the hiring of the attorneys. In the trial court, as on appeal, appellants have conflated the question of authority to represent ACI and ASC with the merits questions regarding corporate governance. As in *Murrin Bros. 1885*, the trial court's rulings on the motions to show authority did not determine the merits question of whether Paine is a director of both companies.

In addition, Paine was pro se when counsel for ACI and ASC left the law firm that had been ACI and ASC's counsel of record, and they began practicing under the auspices of another law firm. Although the motion to substitute counsel filed by ACI and ASC's attorneys initially indicated that Paine was opposed, a supplemental certificate of conference indicated that Paine was no longer opposed to the substitution. Paine did not file an objection to the motion to substitute counsel. Appellees argue on appeal that Paine has waived his challenge to the authority of counsel to represent ACI and ASC by his conduct. We agree.

Waiver is "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Crosstex Energy Servs., L.P. v. Pro*

24

*Plus, Inc.*, 430 S.W.3d 384, 391 (Tex. 2014) (quoting *Sun Expl. & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987)). "Though waiver is a question of intent, it need not be explicit." *LaLonde v. Gosnell*, 593 S.W.3d 212, 219 (Tex. 2019). A party demonstrates his intent to waive a right by behaving in a manner that is unequivocally inconsistent with asserting that right in light of the surrounding circumstances. *Crosstex*, 430 S.W.3d at 393–94. Parties may waive certain rights by failing to object. *See id.* at 394.

By failing to object to the motion to substitute counsel after the supplemental certificate of conference stated that Paine was not opposed, Paine waived his complaint about the authority of counsel to represent ACI and ASC. We overrule the issues that challenge the court's rulings on the motions to show authority.

## II.    Summary-judgment standards of review

"Summary judgments must stand or fall on their own merits." *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014) (quoting *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993)); *accord Transcor Astra Grp. S.A. v. Petrobras Am. Inc.*, 650 S.W.3d 462, 478 (Tex. 2022) (holding that summary judgment motion must stand or fall on grounds expressly presented in motion). "A court cannot grant summary judgment on grounds that were not presented." *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d

193, 204 (Tex. 2002). "[I]f the grounds for summary judgment are not expressly presented in the motion for summary judgment itself, the motion is legally insufficient as a matter of law." *McConnell*, 858 S.W.2d at 342. "In determining whether grounds are expressly presented, we may not rely on briefs or summary judgment evidence." *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997)

We review a trial court's summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). In doing so, "we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

## A. No-evidence motion for summary judgment

A no-evidence motion for summary judgment under Rule 166a(i) is essentially a pretrial motion for directed verdict. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009); *see* TEX. R. CIV. P. 166a(i). After an adequate time for discovery, a party without the burden of proof may, without presenting evidence, seek summary judgment on the ground that there is no evidence to support one or more essential elements of the nonmovant's claim or defense. TEX. R. CIV. P. 166a(i). The motion must specifically state the elements as to which there is no evidence. *Id.*; *see Timpte Indus.*, 286 S.W.3d at 310. The trial court is

required to grant the motion unless the nonmovant produces summary-judgment evidence that raises a genuine issue of material fact. TEX. R. CIV. P. 166a(i).

## B.    Traditional motion for summary judgment

To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lujan*, 555 S.W.3d at 84. "If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment." *Lujan*, 555 S.W.3d at 84; *see Maldonado v. Maldonado*, 556 S.W.3d 407, 414 (Tex. App.—Houston [1st Dist.] 2018, no pet.). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). A defendant moving for summary judgment on an affirmative defense has the burden to conclusively establish every element of that defense. *See Draughon v. Johnson*, 631 S.W.3d 81, 88 (Tex. 2021).

## III.   The appellees filed a summary-judgment motion relying on no-evidence and traditional grounds for different causes of action pleaded by the appellants.

The appellees' "traditional and no-evidence motion for summary judgment" did not assert traditional and no-evidence grounds for summary judgment on the same cause of action. *E.g.*, *Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004)

27

(holding that party may combine request for summary judgment under no-evidence standard with request under traditional summary judgment standard in single motion). Rather, the motion in this case was a combination of (1) what appeared to be an omnibus no-evidence challenge to all the appellants' claims except the declaratory judgment claim and (2) a traditional summary judgment on two affirmative defenses relevant only to the declaratory judgment claim.

## IV. The trial court erred by granting the no-evidence summary-judgment motion.

The no-evidence motion for summary judgment in this case was expressly directed to a claim under the TTLA, which authorizes an award of attorney's fees to a prevailing party. The motion stated: "Plaintiffs [appellants] alleged several causes of action that are founded upon the pivotal allegation that Defendants committed theft or fraud." The motion also stated: "Plaintiffs also allege that Defendant Golden wrongfully issued himself improper distributions." Although the appellants' live pleading made no mention of any claim under the TTLA, the appellees' summary-judgment motion stated: "The applicability of the Texas Theft Liability Act is confirmed by Plaintiffs' allegation that 'the underlying wrongful conduct violates provisions of the Texas Penal Code, including theft and misapplication by a fiduciary.'"

With that backdrop, and without identifying any elements of the claims pleaded in the appellants' second amended petition or disclosed in the appellants'

28

disclosures of legal theories[2], the appellees moved for summary judgment. This portion of the motion was entitled, "Traditional and No Evidence Motion for Summary Judgment on Attorneys' [sic] Fees Claims." In this part of their motion, they asserted that:

(1)  they were entitled to recover attorney's fees as prevailing parties under the TTLA;

(2)  the auditor's report conclusively established that there was no evidence of theft or fraud regarding the $1,019,000 overstatement of income in ACI's 2015 tax returns;

(3)  "Plaintiffs cannot prevail on any claim based on allegations of theft or fraud;"

(4)  "Plaintiffs have no evidence of any improper distributions;"

(5)  "Plaintiffs . . . identify no actual damages . . . resulting from any alleged distribution;" and

(6)  "Plaintiffs cannot prevail on their theft claims, and Defendants are the prevailing parties because there is no theft or fraud. Defendants are

---

[2]  In an amended disclosure, the appellants disclosed the legal theories and factual bases of their claims. This clarified that the appellants' causes of action were:

(1)  a writ of mandamus regarding inspection of books and records;
(2)  a challenge to the validity of corporate acts under the Texas Business Organizations Code, specifically: the $400,000 tax write down, the failure to keep accurate accounting records, the payment of disproportionate de facto dividends to Golden, Golden's failure to exercise reasonable care in handling cash inventory or implementing controls; and
(3)  an action seeking a common law accounting and equitable relief, in regard to the allegedly unequal distributions; and
(4)  derivative claims for breach of fiduciary duty in the maintenance of accounting records and for conversion regarding the allegedly unequal distributions; and
(5)  a declaratory judgment that Paine is a director of both companies.

29

therefore entitled to recover their reasonable and necessary attorney's fees from Paine and the Trustee under the Theft Liability Act."

The appellants did not plead a cause of action under the TTLA or mention this statute in their live pleading.[3] The appellants' live pleading refers to theft only once, stating: "Because the wrongdoing of Golden was committed maliciously and/or fraudulently, Plaintiffs also seek an award of exemplary damages. The **statutory cap does not apply because the underlying wrongful conduct violates provisions of the Texas Penal Code, including theft** and misapplication by a fiduciary." (Emphasis added.) And the appellees did not expressly challenge the elements of the claims that the appellants did plead as to which they contend there was no evidence. The appellees' summary-judgment motion did not expressly mention any element of the appellants' claims for a writ of mandamus, the challenge to the validity of corporate acts under the Texas Business Organizations Code, the action for a common law accounting, or the derivative claims for breach of fiduciary duty and conversion.

It is axiomatic that a no-evidence motion must state the element or elements for which there is no evidence. TEX. R. CIV. P. 166a(i). The Supreme Court of Texas has "called for strict enforcement of this requirement." *Cmty. Health Sys.*

---

[3] The TTLA requires proof of theft as defined by the Penal Code. *See* TEX. CIV. PRAC. & REM. CODE § 134.003(a); *see also* TEX. PENAL CODE §§ 31.03–.04, 31.06–.07, 31.11–.13. In this case, Golden—as a 50% shareholder in both ACI and ASC and a director and the president of both companies—had some legal right to distributions and access to the companies' funds.

*Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 695 (Tex. 2017); *see Timpte Indus*, 286 S.W.3d at 310–11 (holding that no-evidence motion must specifically identify the challenged elements to satisfy Rule 166a(i)).

It is similarly well-settled that a trial court cannot render summary judgment motion on grounds not presented in the motion. *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011); *Timpte Indus.*, 286 S.W.3d at 310–11; *Johnson*, 73 S.W.3d at 204; *Science Spectrum*, 941 S.W.2d at 912. "Granting a summary judgment on a claim not addressed in the summary judgment motion therefore is, as a general rule, reversible error." *G & H Towing*, 347 S.W.3d at 297 (citing *Chessher v. Sw. Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983) (per curiam)).

The trial court granted summary judgment against appellants on their "affirmative claims," and dismissed those claims with prejudice based on a motion that addressed only a claim that was not pleaded and that failed to address all the claims that were pleaded. Strict enforcement of the specificity requirement in Rule 166a(i) does not permit this result.

## V.  The trial court erred by granting the traditional summary-judgment motion.

The appellants argue that the trial court erred by granting traditional summary judgment on the affirmative defense of judicial estoppel. In the trial court, the appellees moved for summary judgment on their affirmative defenses of judicial admission and judicial estoppel. Both defenses were based on

31

representations or omissions made by Paine in unrelated bankruptcy proceedings.

The summary-judgment evidence included a statement of financial affairs from

Paine's bankruptcy proceeding and an answer that he filed as a defendant in an

adversary proceeding in an unrelated bankruptcy.

In the 2015 statement of financial affairs from Paine's personal bankruptcy,

Question 18 asked:

> If the debtor is an individual, list the names, addresses, taxpayer-identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation . . . within SIX YEARS immediately preceding the commencement of this case. {CR 4437}

Paine responded by listing only "Automated Financial Systems" and listing

"10 years+" instead of beginning and ending dates:

| NAME, ADDRESS, AND LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO. (ITIN) / COMPLETE EIN | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
| --- | --- | --- |
| Automated Financial Systems | Sales | 10 years+ |

The order of discharge in this bankruptcy case was included in the summary-

judgment evidence.

In 2004, Paine, The Web Zealots, and ACI, were defendants in an adversary

proceeding brought by the bankruptcy trustee for debtor Cash Media Systems, Inc.

An answer filed in that case on behalf of Paine and ACI stated:

> Defendants have not knowledge as to whether CMS entered into a contract with The Web Zealots. Defendants deny that Stephen B. Paine was a party to the alleged contract, and further deny that Paine

32

was the managing partner representing The Web Zealots. Defendants admit that Paine was an officer, director, and shareholder in Defendant Automated Cash, Inc. ("ACI").

Paine and the Trust responded to the summary judgment, arguing that the appellees had not conclusively proven the elements of judicial estoppel. Appellants asserted in the trial court that Paine's statement of financial affairs was not inconsistent with their position in this case because Paine listed "'Automated Financial Systems,' which are the relevant Defendant Companies." The appellants also argued that Paine did disclose his directorship relationship to the bankruptcy court, and the appellees did not show that he never amended his statement of financial affairs. Finally, Paine and the Trust argued that Golden, ACI, and ASC did not demonstrate that Paine acted intentionally and not inadvertently.

The trial court expressly granted summary judgment based on judicial estoppel.

"The doctrine of judicial estoppel 'precludes a party from adopting a position inconsistent with one that it maintained successfully in an earlier proceeding.'" *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008) (quoting 2 ROY W. MCDONALD & ELAINE G. CARLSON, TEXAS CIVIL PRACTICE § 9.51 at 576 (2d ed. 2003)). "The doctrine is not strictly speaking estoppel, but rather is a rule of procedure based on justice and sound public policy." *Pleasant Glade*, 264 S.W.3d at 6 (citing *Long v. Knox*, 155 Tex. 581, 291

S.W.2d 292, 295 (1956)). Judicial estoppel is not punitive; it precludes a party from gaining an unfair advantage by adopting inconsistent positions in litigation and "playing fast and loose with the judicial system for their own benefit." *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 643 (Tex. 2009); *see also Tenneco Chem. v. William T. Burnett & Co.*, 691 F.2d 658, 665 (4th Cir. 1982) (finding "the determinative factor is whether the appellant intentionally misled the court to gain unfair advantage").

Because the issue in this case arises from a bankruptcy context, we look to federal law to determine whether judicial estoppel applies. *Espinosa v. Aaron's Rents, Inc.*, 484 S.W.3d 533, 541 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *Tow v. Pagano*, 312 S.W.3d 751, 756 (Tex. App.—Houston [1st Dist.] 2009, no pet.). To establish judicial estoppel as an affirmative defense, the appellees were required to conclusively show that: (1) the appellants asserted a legal position in this state court proceeding that is clearly inconsistent with their prior position in the bankruptcy court; (2) a court accepted the prior position; and (3) the nondisclosure in the bankruptcy case was intentional and not inadvertent. *Espinosa*, 484 S.W.3d at 541.

Appellants argue that the appellees failed to conclusively prove that Paine and the Trust asserted a legal position in this case that is clearly inconsistent with their prior position asserted in bankruptcy court. We agree.

The appellees argued that the statement of financial affairs from Paine's bankruptcy indicated that his service began and ended more than ten years prior to the filing of the bankruptcy petition. Question 18 of the statement of financial affairs asked for beginning and ending dates of service as director, but Paine responded "10+," which is ambiguous. While it could suggest that his service began and ended more than ten years earlier, it could also suggest that his service began ten years earlier and was continuing. Because this evidence is ambiguous, it does not conclusively establish that Paine took a different position in the bankruptcy court about whether he was a director of ACI.[4]

The statement in the answer in the adversary proceeding is likewise ambiguous. Paragraph 11 of the answer refers to a contract and a time when parties entered the contract. The appellees argue that Paine's statement that he "was" a director of ACI means that when he filed the answer, he was no longer a director of ACI. But the answer does not say that he ceased serving as a director of ACI at any time. The petition to which Paine's answer was responsive is not in the record. Without further context, this document is inconclusive about the dates when Paine served as a director of ACI.

---

[4] The parties do not differentiate between AFS and ACI. The appellees did not argue that the statement of financial affairs is a contrary statement because it lists only AFS and not ACI, and the appellants assert that the companies are the same. Nothing in the voluminous appellate record explains the precise relationship between these companies, though emails between Golden and Paine suggest a pattern of using the terms ACI and AFS interchangeably.

Because the summary-judgment evidence the appellees rely on does not conclusively show that Paine previously took an adverse position in federal court on the question of whether he is a director of ACI, we conclude that the appellants failed to prove the first element of judicial estoppel and were not entitled to summary judgment. We sustain the first issue in the Trust's brief.

## Conclusion

We reverse the trial court's summary judgment and remand this case to the trial court for further proceedings.


Peter Kelly
Justice

Panel consists of Justices Kelly, Rivas-Molloy, and Guerra.